UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**

TIMOTHY ENIX a/k/a Blaze,  1:15-CR-00142 EAW

Defendant.
_____

Defendant Timothy Enix a/k/a Blaze (hereinafter "Defendant" or "Mr. Enix") sought revocation of the magistrate judge's detention order before this Court pursuant to 18 U.S.C. § 3145(b). (Dkt. 177). As part of the *de novo* hearing conducted in connection with Mr. Enix's motion, Mr. Enix decided to testify on his own behalf, notwithstanding his Fifth Amendment rights. Prior to his testimony, counsel for Mr. Enix filed an evidentiary brief regarding the scope of examination (Dkt. 214), and the Government filed a memorandum in response (Dkt. 219). On July 18, 2016, the parties appeared for purposes of continuing the *de novo* detention hearing and presenting Mr. Enix's testimony. Prior to Mr. Enix taking the witness stand, the Court addressed the issues raised by the parties concerning the scope of Mr. Enix's examination, and its subsequent use in these proceedings. The following Decision and Order is intended to memorialize the Court's oral rulings on July 18, 2016. The Court assumes the parties' familiarity with the underlying facts of this matter, and will not repeat them herein.

As an initial matter, Mr. Enix sought to limit the testimony presented to the Court by, for instance, only having questions asked of Mr. Enix by the Court, as was done by

the district court in *United States v. Shakur*, 656 F. Supp. 241 (S.D.N.Y. 1987), *rev'd*, 817 F.2d 189 (2d Cir. 1987). The Court rejected this proposal. While stressing that Mr. Enix was under no obligation to testify, the Court determined that questioning of Mr. Enix with no cross examination would be of limited value. Indeed, the Second Circuit, in reversing the district court's release order in *Shakur*, found that it was improper to rely primarily on the defendant's demeanor "in the absence of cross examination by the government . . . [which resulted in] a fact-finding procedure of limited utility. . . ." 817 F.2d at 200. *See also California v. Green*, 399 U.S. 149, 158 (1970) (Cross-examination is "the 'greatest legal engine ever invented for the discovery of truth.'") (quoting 5 J. Wigmore, *Evidence* § 1367 (3d ed. 1940)). Therefore, the Court determined that if Mr. Enix elected to testify, he would be subject to cross examination consistent with Federal Rule of Evidence 611(b) (although the Court would not allow the Government to inquire into additional matters as if on direct examination). Moreover, the Court indicated that if during the course of the cross examination counsel for Defendant became concerned about his client's Fifth Amendment protections, he could object and the Court would allow an opportunity for consultation between Mr. Enix and his counsel.[1]

The more difficult issue faced by the Court dealt with the use of Mr. Enix's testimony in any subsequent stage of this proceeding. In *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court recognized in the context of a suppression hearing that "when a defendant testifies in support of a motion to suppress evidence on Fourth

---

[1] There was no such objection by Mr. Enix's counsel during the testimony.

Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt. . . ." *Id.* at 393. Based upon that reasoning, as an alternative to limiting any cross examination, Mr. Enix sought "use immunity"[2] to prevent any subsequent use of his testimony at trial. (Dkt. 214 at 9-11).

Likely due to the rarity of a defendant taking the witness stand during a detention hearing, there is no case law directly on point in this Circuit concerning the use of a defendant's detention hearing testimony at trial, and the case law outside this Circuit is fairly limited. Indeed, a suppression hearing is different in many respects than a detention hearing, and thus, courts have reached varying results on whether the principles of *Simmons* apply in the context of a detention hearing.

In *United States v. Perry*, 788 F.2d 100 (3d Cir. 1986), the Third Circuit Court of Appeals considered the issue in the context of whether the Bail Reform Act's rebuttable presumptions created an irreconcilable conflict with a defendant's Fifth Amendment rights. In rejecting that argument of unconstitutionality, the Third Circuit determined that

---

[2] The Government argued that it was not within the power of the Court to grant "immunity" to Mr. Enix. The Court recognizes that courts, including the Second Circuit Court of Appeals, have referenced the teachings of *Simmons* as creating judicial use immunity. *See United States v. Bryser*, 95 F.3d 182, 185-86 (2d Cir. 1996) (referencing "use immunity" under *Simmons*, although finding that it was not available at a resentencing hearing); *United States v. Turkish*, 623 F.2d 769, 776 (2d Cir. 1980) ("Judicially created use immunity, albeit premised on constitutional considerations, was fashioned by the Supreme Court in . . . *Simmons*. . . ."). Nonetheless, the Court agrees with the Government. The Court's power based upon *Simmons* is to limit the Government's ability to use Mr. Enix's testimony at trial, not to confer "immunity." *See* Footnote 3 in this Decision and Order, *infra*.

the granting of "use-fruits immunity"[3] would be appropriate for a defendant who testifies at a detention hearing to rebut the presumptions found at 18 U.S.C. § 3142(e)(2). According to the court, this would avoid placing "the defendant in the position of risking self-incrimination by testifying as to his future intentions, or running the grave civil disability of preventive detention. . . ." *Id.* at 115.

In contrast, in *United States v. Ingraham*, 832 F.2d 229 (1st Cir. 1987), the First Circuit Court of Appeals held that it was <u>not</u> error to admit the defendant's statements made during a bail hearing at trial. In comparing a bail hearing to a suppression hearing, where "a defendant must frequently divulge the facts of his case in order to protect his rights" the court recognized that bail hearings "are a fundamentally different breed of cat." *Id.* at 237. The court explained that bail rights are not so contingent on a defendant's ability to speak (as they are in suppression hearings), the information presented at a bail hearing is "often less central to the nub of the case," and the "needed input can usually be obtained from sources other than the suspect's own testimony." *Id.* at 237-38. The First Circuit specifically did not reach the issue of whether the result

---

[3] The Third Circuit Court of Appeals has since rejected the notion that a court can immunize a witness. In *United States v. Quinn*, 728 F.3d 243 (2013), the court, sitting *en banc*, recognized that it had been the only Court of Appeals to permit a trial court to immunize a defense witness, and it reversed its previous holdings in that regard: "Every other Court of Appeals has rejected this theory of judicial power. Today we do as well, and overturn that part of [our prior precedent] . . . that recognizes judicial grants of immunity. Immunity is a statutory creation, bestowed by Congress on the Executive Branch. . . . The decision to immunize a witness to obtain his testimony is a core prosecutorial function. . . ." *Id.* at 247. The court recognized the inaccuracy of its previous holdings, including the reference in *Perry* to the suggestion that *Simmons* found an inherent judicial power to grant witness immunity. *Id.* at 255. Rather, *Simmons* created an exclusionary rule whereby a court could exclude the use of testimony at trial, but it did not create the power of the judiciary to immunize a witness. *Id.*

would be different in a rebuttable presumption case, as the presumptions were not applicable in that case. *Id.* at 238. Moreover, the court noted that its conclusion was buttressed by the fact that the defendant's "freedom was not meaningfully at stake" as he was incarcerated in a state penitentiary on an unrelated charge at the time of the bail hearing. *Id.* at 239.

Similar to the First Circuit, the Fifth Circuit has endorsed the notion that a defendant's testimony at a bail hearing can be admitted at trial, and it has held so even in the situation where a defendant bears a burden at the bail hearing. In *Porretto v. Stalder*, 834 F.2d 461 (5th Cir. 1987), the Fifth Circuit Court of Appeals held that a Louisiana statute (which placed a burden of proof on the defendant in the context of bail) did not compel the defendant to waive his right against self-incrimination because he was not required to personally testify to satisfy his burden. *Id.* at 466. However, the court then went on to note that even if it was error to admit the defendant's bail hearing testimony at trial, it was harmless error. *Id. See also United States v. Parker*, 848 F.2d 61, 62-63 (5th Cir. 1988) (Rejecting the defendant's challenges to the constitutionality of the Bail Reform Act based upon the allegation that it violates the right against self-incrimination, the court stated: "The charging instrument and the government's evidence will provide information concerning the factors, and the Act does not demand further explanation by the defendant. If the defendant wishes to rebut the government's allegations and evidence, he need not personally testify because he may present evidence through hearsay or by proffer.").

It appears as though the Sixth Circuit Court of Appeals has followed in the path of the First and Fifth Circuits, and allowed for a defendant's bail hearing testimony to be used against him at trial, even in the context of a defendant facing a rebuttable presumption. *See United States v. Dean*, No. 90-1420, 1991 WL 29197, at *3-4 (6th Cir. Mar. 7, 1991) (appearing to endorse the concept that reference during trial to defendant's detention hearing testimony did not violate Fifth Amendment rights). However, as with the decisions issued by the First and Fifth Circuits, the court in *Dean* seems to hedge against its finding that the testimony can be used, by resting its decision on an alternative basis, finding that even if it was error to admit the testimony, it was harmless. 1991 WL 29197, at *3.

Again, it does not appear as though there is any case law on the subject within this Circuit. The only tangentially related case discovered in the Court's research was *United States v. Cooper*, No. 90 Cr. 514 (DNE), 1991 WL 60371, at *6-7(S.D.N.Y. Apr. 9, 1991), where a statement made by a defendant to his attorney during discussions between the two at a bail hearing, with the defendant loudly proclaiming that the substance in his pants was cocaine, not crack, was held to be usable against the defendant at trial. That situation is plainly factually distinct from the present case.

While it certainly would be helpful if there was more definitive case law on the issue, the Court concludes, based on the particular facts presented here related to Mr. Enix's testimony, that because Mr. Enix is faced with rebuttable presumptions under the Bail Reform Act, and because he sought to testify as to the underlying facts of the criminal charges against him in an effort to rebut those presumptions, the Government is

prevented from using that testimony as part of its case-in-chief at trial. As the Supreme Court found in *Simmons*, it is "intolerable that one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 393. Here, if Mr. Enix was forced to decide between testifying in an effort to rebut the Bail Reform Act presumptions to vindicate his constitutional right of liberty, without any protections against the use of that testimony at trial, he would be forced into the intolerable choice that the Supreme Court cautioned against in *Simmons*.

However, as with testimony during a suppression hearing, this finding does not extend to the use of Mr. Enix's testimony for impeachment purposes if he elects to testify at trial. *United States v. Jaswal*, 47 F.3d 539, 543 (2d Cir. 1995); *see also United States v. Amato*, 356 F.3d 216, 219-20 (2d Cir. 2004) (statements made by defense attorney in opposition to motion to revoke bail could be used to cross examine defendant who testifies at trial). In other words, a defendant cannot use a statement in support of his quest to be released on bail as a sword, and then be shielded from its consequences if he testifies differently at trial.

Finally, as with suppression hearing testimony, it appears as though Mr. Enix's detention hearing testimony could be properly considered during any sentencing phase of this proceeding. *See, e.g., United States v. Taylor*, 749 F.3d 842, 847 (9th Cir. 2014) (defendant's willful and false statements made during bond revocation hearing warranted enhancement under U.S.S.G. § 3C1.1); *United States v. Crousore*, 1 F.3d 382, 386 (6th Cir. 1993) (same). *See also United States v. Lincecum*, 220 F.3d 77, 80 (2d Cir. 2000) (U.S.S.G. § 3C1.1 enhancement may be imposed where defendant knowingly submits

false affidavit in support of motion to suppress if affidavit could have influenced disposition of suppression motion); *United States v. Matos*, 907 F.2d 274, 276 (2d Cir. 1990) (obstruction of justice enhancement appropriately applied where false testimony supplied at suppression hearing). However, while not expressly indicated at the appearance on July 18, 2016, it seems appropriate to note that the Court's ruling in this regard (with respect to sentencing) can be revisited by the parties and further briefed, if it becomes necessary at any sentencing stage of this proceeding.

## CONCLUSION

For the foregoing reasons, Mr. Enix's testimony during the *de novo* detention hearing on July 18, 2016, may not be used by the Government at trial as part of its case-in-chief, although it may be used for impeachment purposes in the event that Mr. Enix elects to testify. This Decision and Order constitutes an order of suppression for purposes of 18 U.S.C. § 3731.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   July 25, 2016
         Rochester, New York