UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DAVID PIRK et al.

        Defendants.

**DECISION AND ORDER**

1:15-CR-00142 EAW

---

## INTRODUCTION

The above-captioned matter involves 12 defendants[1] named in a 46-count Second Superseding Indictment (Dkt. 33) (hereinafter "Indictment") returned on March 16, 2016, alleging various crimes, including a RICO[2] conspiracy in violation of 18 U.S.C. § 1962(d), firearm offenses in violation of 18 U.S.C. § 924(c), various narcotics offenses, crimes in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and various VICAR[3] counts, all pertaining to the operation of the Kingsmen Motorcycle Club (hereinafter "KMC"). The acts of the alleged conspiracy include the execution-style murders of two KMC members, Paul Maue and Daniel "DJ" Szymanski, that occurred outside the KMC North Tonawanda Chapter clubhouse during the early morning hours of September 6, 2014.

---

[1] Initially 16 defendants were named in the Second Superseding Indictment, but four of the defendants have entered pleas of guilty.

[2] "RICO" refers to the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968.

[3] "VICAR" refers to the Violent Crimes in Aid of Racketeering Activity statute, codified at 18 U.S.C. § 1959.

Defendant Andre Jenkins ("Jenkins") was convicted after a jury trial in state court of the murders. However, the acts alleged in the Indictment expand far beyond the murders and cover a time period of at least 10 years.

Currently pending before the Court are motions filed by the following four defendants seeking severance—defendant Thomas Scanlon ("Scanlon") (Dkt. 384), defendant Robert Osborne, Jr. ("Osborne") (Dkt. 387), defendant Stanley Olejniczak ("Olejniczak") (Dkt. 394), and defendant Jason Williams ("Williams") (Dkt. 400).[4]

For the reasons set forth below, the motions for severance are denied without prejudice, except to the extent that Scanlon seeks to sever Counts 27-30, which relief is denied with prejudice.

## PROCEDURAL HISTORY

After the return of the Indictment, this Court referred the case to United States Magistrate Judge Michael J. Roemer pursuant to 28 U.S.C. § 636. (Dkt. 35). Magistrate Judge Roemer issued a Decision and Order on September 7, 2016, setting forth December 7, 2016 as the deadline to file pretrial motions. (Dkt. 294). With the exception of Jenkins, who was granted an extension to March 7, 2017 (Dkt. 393), all defendants have filed pretrial motions. A trial date has been scheduled for January 16, 2018. (Dkt. 445).

Scanlon and Osborne filed their motions in accordance with the time deadlines set forth by Magistrate Judge Roemer (Dkt. 384; Dkt. 387), whereas Olejniczak and

---

[4]   Defendants Osborne's, Olejniczak's, and Williams' motions seeking severance also seek other forms of relief. (Dkt. 387; Dkt. 394; Dkt. 400). This Decision and Order only addresses the severance issues raised in those motions.

Williams were untimely with their motions (Dkt. 394; Dkt. 400). Nonetheless, particularly since the Court finds that the motions are premature at this stage of the litigation, and there is no prejudice to the Government from the late filing, the Court will consider the motions for severance as filed by all four defendants.[5]

In accordance with the schedule set by the Court (Dkt. 398; Dkt. 403), the Government responded to the motions for severance on December 28, 2016 (Dkt. 423), and Scanlon filed reply papers in further support of his motion on January 4, 2017 (Dkt. 430). The Court held oral argument on January 12, 2017, at which time it reserved decision. (Dkt. 442).

## DEFENDANTS' ARGUMENTS IN SUPPORT OF SEVERANCE

Each defendant advances similar arguments as to why severance is warranted—they allege that they are peripheral figures to the alleged conspiracy and they will suffer spillover prejudice as a result of their relatively minor roles and lack of criminal history when compared to other defendants. (*See* Dkt. 384; Dkt. 387 at ¶¶ 4-8; Dkt. 400 at ¶¶ 73-81). Olejniczak argued in his motion papers that he was basing his severance motion on his alleged "misidentification" (Dkt. 394 at 7), but when questioned at oral argument as to the basis for his requested severance, it was apparent that his argument is similar to the other defendants'—that, although a member of KMC, his alleged role in the

---

[5] Defendant David Pirk ("Pirk") has also filed a motion to sever (Dkt. 435) that is the subject of a separate briefing schedule (Dkt. 446). Defendant Sean McIndoo ("McIndoo") filed a motion for joinder, requesting to join in Scanlon's, Williams' and Pirk's motions for severance. (Dkt. 438). To the extent McIndoo based his motion for joinder on the same severance arguments raised by Scanlon and Williams, this Decision and Order is intended to address that motion for joinder.

conspiracy is minor and necessitates severance so as to avoid spillover prejudice. Scanlon makes the additional argument that Counts 27-30, which he refers to as the "Obstruction Charges," should alternatively be severed from the remaining counts against him. (Dkt. 384 at 13-14).

## GOVERNMENT'S RESPONSE

The Government filed its Consolidated Response to Defendants' Motions for Severance on December 28, 2016. (Dkt. 423). The Government argues that none of the defendants have met their heavy burden of establishing that they would be substantially prejudiced by a joint trial, and that "sound limiting and curative instructions will be sufficient to cure any potential prejudice." (*Id.* at 3). The Government contests the defendants' characterizations of themselves as playing a minor role in the alleged conspiracy. (*Id.* at 7-11, 24, 26). The Government also represents that the trial will last less than four months (*id.* at 22), and that whether tried separately or jointly, the evidence would be largely the same (*id.* at 7-8, 21-22, 24, 25).

## LEGAL STANDARD

Rule 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b) ("The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count."). The Indictment plainly alleges a common scheme and conspiracy involving KMC, with all defendants named in the RICO conspiracy count, among others, and thus the defendants are properly joined pursuant to Fed. R. Crim. P. 8(b). *See United*

-4-

States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988) (It is an "established rule . . . that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b).").

Pursuant to Rule 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The decision to sever a trial pursuant to Fed. R. Crim. P. 14 is "confided to the sound discretion of the trial court." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). A trial court's decision concerning severance is considered "virtually unreviewable," and the denial of such a motion "will not be reversed unless appellants establish that the trial court abused its discretion." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). In order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial." *Id.*

The party requesting severance must demonstrate substantial prejudice: "When defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 369-70 (E.D.N.Y. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *see also Cardascia*, 951 F.2d at 482 (in order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to

deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'"). "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (citation omitted). "That the defendant would have had a better chance of acquittal at a separate trial does not constitute substantial prejudice." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983).

There is a powerful presumption in favor of joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210, 219 n.7 (1987); *see also Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). The Second Circuit has instructed that "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together," and "[j]oint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy. . . ." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citations omitted); *see also United States v. Van Sichem*, No. SS 89

CR. 813 (KMW), 1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990) ("There is a strong presumption in favor of joint trials for jointly indicted defendants, particularly where, as here, the 'crimes charged involve a common scheme or plan.'") (quoting *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979)). Indeed, "joint trials serve the interests of the government, the accused, and the public by eliminating the additional expense and repetition associated with successive prosecutions." *Id.* (*citing United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977)). Moreover, it is well settled that a "RICO count itself, 'virtually by definition,' constitutes 'a "series of acts or transactions" sufficiently inter-related to permit a joint trial of all defendants.'" *United States v. Rastelli*, 653 F. Supp. 1034, 1041 (E.D.N.Y. 1986) (quoting *United States v. Bagaric*, 706 F.2d 42, 69 (2d Cir. 1983)).

Notwithstanding the presumption in favor of joint trials, the Second Circuit has instructed that, in cases involving lengthy trials of more than four months and more than ten defendants, a district judge should abide by certain "benchmarks" in exercising her discretion to sever the trial. *See United States v. Casamento*, 887 F.2d 1141, 1151-52 (2d Cir. 1989); *see also United States v. Dinome*, 954 F.2d 839, 842 (2d Cir. 1992) ("[t]here is no support in caselaw or in logic for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues were actually beyond the jury's competence.").

## A DETERMINATION CONCERNING DEFENDANTS' MOTIONS FOR SEVERANCE WOULD BE PREMATURE

Defendants have not met their heavy burden of establishing the requisite prejudice justifying severance. At best, they have cited to the potential prejudice that could inure to their detriment at a joint trial because of the expanse of the charged conspiracy, but they have not distinguished this situation from any other conspiracy case involving multiple defendants and counts. Defendants have not established that any potential prejudice could not be properly cured by appropriate limiting instructions or other evidentiary rulings. Particularly given the Government's representations that the evidence would be largely the same in a joint or separate trial, and the anticipated length of the trial, principles of judicial economy certainly militate in favor of a joint trial.

Nonetheless, the Court is cognizant of the fact that this case is approximately one year away from trial, and if all defendants proceed to trial, the benchmarks established by the Second Circuit in *Casamento* will be exceeded at least with respect to the number of defendants. Moreover, the Court approaches with caution the fact that Jenkins has been convicted in state court of the murders—a critical part of the alleged RICO conspiracy. Presumably the Government will seek to introduce that conviction at trial. That issue could potentially be resolved by appropriate evidentiary rulings or limiting instructions, as opposed to severance. *See, e.g., United States v. Pryba*, 900 F.2d 748, 758 (4th Cir. 1990) (trial court did not improperly admit into evidence 15 prior state court convictions of one defendant, which served as predicate acts of RICO conspiracy, where trial judge

"took meticulous care to instruct the jury that prior convictions . . . could only be considered predicate acts as to [that defendant]. . . .").

These are issues that will need to be resolved in advance of trial, but at this stage of the proceedings, the Court believes it would be premature to do so. At this time, the Court concludes that it does not possess all relevant information it needs to appropriately resolve these severance issues. Accordingly, the motions for severance are denied without prejudice, except as set forth below.

## SCANLON'S MOTION TO SEVER THE OBSTRUCTION OF JUSTICE AND FALSE STATEMENTS COUNTS IS DENIED

Scanlon alternatively argues that four counts related to his alleged obstruction of justice and perjury should be severed from the remaining counts. (Dkt. 384 at 13-14). Unlike the remaining portions of the severance arguments, it would not be premature for the Court to resolve this issue—indeed, counsel for Scanlon agreed at oral argument that this issue was ripe for a resolution. Further pretrial proceedings will not impact the resolution of this issue.

Scanlon is charged in ten of the 46 counts in the Indictment, including the RICO conspiracy charged in Count 1, the firearm offenses charged in Counts 2, 42 and 46, and the narcotics offenses charged in Counts 41 and 45. In addition, he is charged in the following counts for which he seeks severance: Count 27 (Obstruction of Justice), Count 28 (Obstruction of Justice), Count 29 (False Statements Before Grand Jury-Irreconcilable Statements), and Count 30 (False Statements Before Grand Jury-Irreconcilable

Statements). Collectively these counts for which Scanlon seeks severance will be referred to as the "Obstruction Charges."

Counts 27 and 28 allege, in sum and substance, that between July 15, 2015, and September 16, 2015, Scanlon violated 18 U.S.C. §§ 1503 and 1512(c)(2) by testifying falsely before the grand jury investigating KMC concerning the following:

(1) his knowledge of KMC, including the KMC Nomads, and his role within the organization;

(2) the nature of his relationship with KMC National President and co-defendant, David Pirk ("Pirk");

(3) his knowledge of the shutdown of the KMC Springville Chapter clubhouse on June 7, 2013, including the assault of Victim B (which serves as part of the specified overt acts alleged in paragraphs 13 through 19 of the overt acts portion of the RICO conspiracy count); and,

(4) his meeting with a rival motorcycle club, the Outlaws, in the summer of 2014.

(Dkt. 33 at 48-49). Counts 29 and 30 allege that Scanlon violated 18 U.S.C. § 1623(c) by allegedly making material declarations during his testimony before the grand jury on September 16, 2015, that were different from his testimony before the grand jury on July 15, 2015, concerning (a) whether he had seen Pirk during the week following the murders on September 6, 2014, and (b) whether he had any information about the shutdown of the KMC Springville Chapter clubhouse on June 7, 2013. (*Id.* at 50-55).[6]

---

[6] Osborne is similarly charged with obstruction of justice in Counts 25 and 26 based upon his allegedly false grand jury testimony in July 2015, concerning Pirk's presence in Olean, New York in September 2014, and a meeting involving Jenkins and Pirk during the same time frame.

Scanlon argues that the Obstruction Charges should be severed from the RICO charges because "the danger of combining those counts into one trial is that the extremely violent nature of the RICO Charges will spill over into the jury's consideration of the self-contained and distinct Obstruction Charges." (Dkt. 384 at 14).

In response, the Government argues that the Obstruction Charges are part-and-parcel with Scanlon's participation in KMC's alleged racketeering activity. (Dkt. 423 at 12-16 ("The obstruction and perjury charges demonstrate the defendant's efforts to thwart law enforcement's investigation into the KMC, and these substantive charges intertwine directly with how the defendant and his cohorts functioned in their criminal organization.")). According to the Government, "it is impossible to separate the obstruction allegations from the RICO Conspiracy and other substantive offenses in which the defendant is charged, and any attempt to do so would amount to an exercise in futility undermining the entire purpose of joint trials." (*Id.* at 16). The Government contends that the Indictment alleges that the racketeering activity included multiple acts of obstruction of justice, efforts to thwart law enforcement's investigation, and conduct aimed at protecting members of the KMC. (*Id.* at 12-13). In other words, according to the Government, Scanlon's alleged conduct serving as the basis for the Obstruction Charges, also serves as evidence of the underlying racketeering activity. In fact, the allegations set forth in Count 1 of the Indictment are specifically incorporated by reference into Count 27.

Scanlon replies that the Obstruction Charges do not allege that he was engaging in that conduct as part of his involvement in the KMC criminal enterprise. (Dkt. 430 at 13).

According to Scanlon, the Government's argument that the underlying racketeering charges are intertwined with the Obstruction Charges is a conclusory claim with no support in the allegations in the Indictment. (*Id.* at 12-13).

As an initial matter, the Court finds that the alleged conduct at issue in the RICO conspiracy is related to the alleged conduct at issue in the Obstruction Charges. *See* Fed. R. Crim. P. 8(a) ("The indictment . . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."). Here, the time period of the RICO conspiracy covers the dates of Scanlon's alleged obstruction of justice and perjury, and the alleged perjury/obstruction of justice involves statements concerning the alleged racketeering activity of KMC.

Evidence that a member of a conspiracy testified falsely about the conspiracy before a grand jury investigating that conspiracy's activities is sufficiently related to the underlying conspiracy to justify a joint trial. Whether Scanlon's alleged false testimony before the grand jury is expressly alleged as part of the overt acts of the conspiracy is not determinative: "It is not necessary that [the obstruction of justice count] . . . be pleaded as one of the predicate acts of the RICO count or as one of the overt acts of . . . [the] conspiracy to be properly joined." *United States v. DePalma*, 461 F. Supp. 778, 791 (S.D.N.Y. 1978) (denying motion to sever obstruction of justice count from counts based upon alleged illegal enterprise, where obstruction of justice count was based upon alleged false testimony before grand jury investigating illegal enterprise).

-12-

Similarly, whether Scanlon's alleged perjury and obstruction of justice activities are specifically alleged to reflect his involvement in the criminal enterprise is not determinative. *See United States v. Sweig*, 441 F.2d 114, 119 (2d Cir. 1971) (where overt acts alleged in conspiracy count formed the subject matter of perjury counts, joinder under Rule 8(a) was proper as overt acts would be admissible at perjury trial to show falsity of grand jury testimony).

In fact, regardless of whether the conduct at issue with the Obstruction Charges constitutes evidence of the underlying racketeering activity, it is appropriate to try the charges together. "[T]here clearly is nothing inherently prejudicial in the joinder of perjury charges with substantive-offense charges." *Garcia v. United States*, 15 F. Supp. 2d 367, 379 (S.D.N.Y. 1998). Indeed, "[c]ourts have repeatedly recognized the appropriateness of trying perjury or obstruction charges together with the underlying crimes to which the perjury relates, where proof of the alleged perjury requires proof of knowledge of the underlying crime." *United States v. Butler*, No. S104 CR.340(GEL), 2004 WL 2274751, at *4 (S.D.N.Y. 2004) (collecting cases). "The law in this circuit clearly supports the joinder of underlying substantive crimes with perjury counts where, as here, the false declarations concern the substantive offenses." *United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984). *See, e.g., United States v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 346 (D. Conn. 1990) (rejecting defendant's argument that severance was warranted where he would only be tried for perjury whereas other defendants were charged with conspiracy and RICO); *United States v. Rastelli*, 653 F. Supp. 1034, 1046 (E.D.N.Y. 1986) (denying motion to sever false declaration and

obstruction of justice counts from RICO counts); *United States v. Clemente*, 494 F. Supp. 1310, 1324 (S.D.N.Y. 1980) (false declaration charges were properly joined with substantive RICO counts "because those substantive counts clearly related to and were the subject of the questions involved in the false declaration charges."); *United States v. Castellano*, 416 F. Supp. 125, 128 (E.D.N.Y. 1975) (denying severance of obstruction of justice and perjury counts where they "involve grand jury testimony concerning the illegal enterprise which forms the predicate of the [racketeering] counts. . . .").

The cases relied upon by Scanlon do not dictate a different result. In *United States v. Villanueva Madrid*, 302 F. Supp. 2d 187 (S.D.N.Y. 2003), while agreeing that joinder was proper under Rule 8(a), the court nonetheless exercised its discretion and severed a money laundering count from bank and wire fraud counts that involved a "separate and self-contained" conspiracy pursuant to Rule 14. *Id.* at 189-191. Similarly, in *United States v. Burke*, 789 F. Supp. 2d 395 (E.D.N.Y. 2011), the indictment charged racketeering and conspiracy related to alleged acts by the Gambino Crime Family, spanning a thirty-year time period. The defendant who sought severance was not charged as part of the criminal enterprise nor was he charged with any of the racketeering counts. Rather, he was charged in witness tampering counts based upon events occurring after the return of the initial indictment in the case. *Id.* at 396-97. While finding that the joinder of the charges was proper under Rule 8(b), the court nonetheless exercised its discretion and granted severance pursuant to Rule 14(a). *Id.* at 399. *See also United States v. Claytor*, 52 F.R.D. 360, 362-63 (S.D.N.Y. 1971) (severing one count of the indictment involving violence that was not based on transactions alleged in other counts and not

connected to other counts as part of a common scheme or plan); *United States v. Coleman*, 497 F. Supp. 619, 620-22 (N.D. Ill. 1980) (granting application for severance where relationship between perjury counts and RICO counts was far from clear, and Government failed to explain relationship in opposition to severance motion).

Scanlon is charged in the Obstruction Charges with testifying falsely about the same subject matter that is charged as part of the RICO conspiracy—including the shutdown of the KMC Springville Chapter clubhouse on June 7, 2013, the assault on Victim B, and his knowledge of Pirk's whereabouts during the week following the murders on September 6, 2014. Joinder of the Obstruction Charges with the underlying racketeering and other counts is plainly proper under Rule 8(a), and Scanlon has not met his burden to justify severing those counts. Scanlon will not be unfairly prejudiced by the jury's consideration of the Obstruction Charges with the other counts, and any potential prejudice can be addressed through appropriate instructions to the jury regarding its consideration of the charges. Moreover, the proof concerning the Obstruction Charges will necessarily be related to the underlying racketeering activity—because again, the Obstruction Charges relate to the veracity of Scanlon's statements concerning KMC and his knowledge of the alleged racketeering activity—and separate trials concerning the charges would be an inefficient and ineffective use of judicial resources. As a result, the Court denies Scanlon's motion to sever the Obstruction Charges.

## **CONCLUSION**

For the foregoing reasons, the motions for severance filed by defendant Thomas Scanlon (Dkt. 384), defendant Robert Osborne, Jr. (Dkt. 387), defendant Stanley Olejniczak (Dkt. 394), and defendant Jason Williams (Dkt. 400) are denied without prejudice, except to the extent that defendant Thomas Scanlon seeks severance of Counts 27-30 (Dkt. 384), that relief is denied with prejudice.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   February 9, 2017
         Rochester, New York