UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                v.

DAVID PIRK, ANDRE JENKINS, a/k/a
Little Bear, TIMOTHY ENIX a/k/a Blaze,
FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II
a/k/a Ed a/k/a Special Ed, JASON WILLIAMS
a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo,
GREGORY WILLSON a/k/a Flip, EMMETT
GREEN, ROBERT OSBORNE, JR., STANLEY
OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a
Snake, RYAN MYRTLE, THOMAS SCANLON
a/k/a Tom, GLEN STACHARCZYCK a/k/a
Turbo, and SEAN MCINDOO a/k/a Professor,

                     Defendants.

_____

**DECISION AND ORDER**

1:15-CR-00142 EAW

## BACKGROUND

The above-captioned matter involves 12 remaining defendants[1] (collectively,
"Defendants") named in a 46-count Second Superseding Indictment (Dkt. 33)
("Indictment") returned on March 16, 2016, alleging various crimes, including a
conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. §§ 1961 *et seq.* ("RICO"), in connection with the operation of the Kingsmen
Motorcycle Club ("KMC").

_____

[1]     Four Defendants—Edgar Dekay, II a/k/a Ed a/k/a Special Ed (Dkt. 412), Thomas
Koszuta a/k/a Kazoo (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)—
have pleaded guilty.

On July 24, 2017, this Court issued a Decision and Order addressing, *inter alia*, those portions of Defendants' pretrial omnibus motions that requested bills of particulars with respect to certain counts of the Indictment. (Dkt. 688). In that Decision and Order, the Court denied all motions for bills of particulars, except to the extent that Defendants sought particularization of Counts 34 through 36 (in which only defendant Filip Caruso ("Caruso") is named), and Counts 45 and 46 (in which all Defendants are named). (*Id.* at 51-59). With respect to those counts, the Court reserved decision on the motions for bills of particulars and requested supplemental briefing. (*Id.* at 54, 59). The Court directed the Government to "identify why it believes that each Defendant has enough information about these counts to prepare his defense, with specific reference to documents or other information supporting its position." (*Id.* at 59; *see also id.* at 54 ("The Government should identify why it believes that Caruso has enough information about these counts [Counts 34 to 36] to prepare his defense, with specific reference to documents or other information supporting its position.")).

As mentioned, only Caruso is named in Counts 34 through 36. (Dkt. 33 at 57-58). Count 34 charges Caruso with distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2, as follows:

> Beginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown, in the Western District of New York, the defendant, **FILIP CARUSO a/k/a Filly**, did knowingly, intentionally and unlawfully possess with the intent to distribute, and distribute, a quantity of cocaine, a Schedule II controlled substance.

(*Id.* at 57). Count 35 charges Caruso with distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) and 18 U.S.C. § 2, as follows:

- 2 -

> Beginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown, in the Western District of New York, the defendant, **FILIP CARUSO a/k/a Filly**, did knowingly, intentionally and unlawfully possess with the intent to distribute, and distribute, a quantity of marijuana, a Schedule I controlled substance.

(*Id.*).    Count 36 charges Caruso with possession of firearms in furtherance of drug trafficking crimes (that is, the drug distribution counts set out in Counts 34 and 35), in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2, as follows:

> Beginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown, in the Western District of New York, the defendant, **FILIP CARUSO a/k/a Filly**, in furtherance of drug trafficking crimes for which he may be prosecuted in a court of the United States, that is, violations of Title 21, United States Code, Section 841(a)(1), committed in the manner set forth in Counts 34 and 35 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

(*Id.*).

Unlike Counts 34 through 36, Counts 45 and 46 are asserted against all Defendants. (*Id.* at 63-64).    Count 45 charges each of the named Defendants with use and maintenance of a premises for drug dealing in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, as follows:

> Beginning on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of this Second Superseding Indictment, the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR., STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo, and SEAN MCINDOO a/k/a Professor**, and others, known and unknown, did knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises known as the

South Buffalo Chapter Kingsmen clubhouse located at 846/850 East Eagle Street, Buffalo, New York, for the purpose of manufacturing, distributing, and using cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance.

(Dkt. 33 at 63).

Count 46 charges each of the named Defendants with possession of firearms in furtherance of a drug trafficking crime (the drug premises count charged in Count 45) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2), as follows:

Beginning on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of this Second Superseding Indictment, the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR., STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo, and SEAN MCINDOO a/k/a Professor**, and others, known and unknown, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Section 856(a)(1), committed in the manner set forth in Count 45 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

(*Id.* at 64).

On August 7, 2017, the Government filed two supplemental submissions in response to the Court's Decision and Order: one regarding Counts 45 and 46 (Dkt. 721), and another regarding Caruso and Counts 34 through 36 and Counts 45 and 46 (Dkt. 725).[2] The Government maintains that Defendants have sufficient information to prepare their

---

[2]    The Court granted the Government's request to file its submission pertaining to Caruso under seal. (Dkt. 695; *see* Dkt. 725).

- 4 -

defenses to Counts 45 and 46, thus obviating the need for a bill of particulars with respect to those counts. (Dkt. 721 at 1). The Government then highlights some of the information that each defendant has—including the Indictment itself, discovery that the Government has provided Defendants, photographs, grand jury testimony, detention hearing testimony, statements to law enforcement, and Facebook messages—that, in its view, demonstrates a connection to the KMC South Buffalo Chapter clubhouse. (*Id.* at 2-18). As to Caruso, the Government contends that he, "possibly more than any other defendant remaining in the case, has gained substantial insight into the case against him and the KMC" (Dkt. 725 at ¶ 5) through, *inter alia*, information gleaned through a related federal prosecution (docketed in case number 14-CR-203), discovery and proceedings in the instant prosecution, and the Indictment. (*See id.*). The Government also contends that Caruso will be receiving disclosure of Jencks Act materials that will aid him in his defense of Counts 34 through 36 and Counts 45 and 46. (*Id.*).

Defendants David Pirk ("Pirk"), Thomas Scanlon ("Scanlon"), Timothy Enix ("Enix"), Robert Osborne, Jr. ("Osborne"), Andre Jenkins ("Jenkins"), and Sean McIndoo ("McIndoo") filed responses to the Government's supplemental submission regarding Counts 45 and 46. (Dkt. 743 (Pirk); Dkt. 745 (Scanlon); Dkt. 746 (Enix); Dkt. 752 (Osborne); Dkt. 757 (Jenkins); Dkt. 760 (McIndoo)). Each of those defendants argues, in the main, that the Government's supplemental submission provides no useful information regarding his individual conduct that would provide a basis for Counts 45 and 46, and as a result, particularization of Counts 45 and 46 is necessary. (*See* Dkt. 743 (Pirk); Dkt. 745

(Scanlon); Dkt. 746 (Enix); Dkt. 752 (Osborne); Dkt. 757 (Jenkins); Dkt. 760 (McIndoo)).

Caruso did not file a response to the Government's supplemental submission.

## DISCUSSION

### I.    Standard of Review

Pursuant to Fed. R. Crim. P. 7(f), a defendant may seek a bill of particulars "in order

to identify with sufficient particularity the nature of the charge pending against him,

thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea

of double jeopardy should he be prosecuted a second time for the same offense." *United*

*States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars amplifies the

pleading (i.e. the indictment), and therefore, the Government will be "strictly limited to

proving what it has set forth in it." *United States v. Germain*, 33 F. App'x 565, 566 (2d

Cir. 2002) (quoting *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963)). As a result,

a bill of particulars should not be substituted for a form of discovery—it "should not

function to disclose evidence, witnesses, and legal theories to be offered by the

Government at trial or as a general investigative tool for the defense." *United States v.*

*Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994). As explained by the Second Circuit:

> [w]hile a bill of particulars is not intended, as such, as a means of learning
> the government's evidence and theories, if necessary to give the defendant
> enough information about the charge to prepare his defense, it will be
> required even if the effect is disclosure of evidence or of theories. A district
> court judge . . . has the discretion to deny a bill of particulars if the
> information sought by defendant is provided in the indictment or in some
> acceptable alternate form.

*United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted). "The granting of a bill of particulars rests within the sound discretion of the district court." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

## II.    Counts 45 and 46

As discussed, Defendants request particularization of Counts 45 and 46. (*See* Dkt. 688 at 54). Count 45 charges each of the named Defendants with use and maintenance of a premises for drug dealing in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, from a date unknown, but starting no later than 2006, and continuing until March 2016. (Dkt. 33 at 63). Count 46 charges each of the named Defendants with possession of firearms in furtherance of a drug trafficking crime (the drug premises count charged in Count 45) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2), over the same period of ten years or more. (*Id.* at 64). The time period is the same as the underlying RICO conspiracy charged in Count 1. (*See id.* at 9 (stating that the alleged RICO conspiracy begin on a date unknown, but started no later than 2006, and continued to the date of the return of the Indictment)).

### A.    Summary of the Government's Additional Submission

The Government maintains that particularization of Counts 45 and 46 is not warranted because of the "voluminous discovery provided to the defendant[s] since June 2016 . . . considered in conjunction with allegations set forth in the Indictment." (Dkt. 721 at ¶ 1). The Government highlights four general categories of information—the Indictment, physical evidence, Defendants' prior statements, and Defendants' Facebook activity—in support of its position.

### 1.    The Indictment

The Government points to the Indictment—particularly its introduction (*id.* at ¶ 3), the "manner and means" section (*id.* at ¶ 5), and the Overt Acts section (*id.* at ¶ 6)—as one source of information available to Defendants that obviates the need for a bill of particulars. The introduction summarizes the history of the KMC; its organizational structure, rules, and chain of command, both nationally and within local chapters; and certain expectations of KMC members, including the requirement that KMC members follow orders from leaders of the KMC and attend mandatory parties in KMC chapters located in New York, Pennsylvania, Florida, and Tennessee. (*Id.* at ¶ 3). The introduction also alleges that KMC members maintained firearms, and that KMC chapter clubhouses "maintained firearms and ammunition to defend the KMC against rival motorcycle gangs and to protect club proceeds" and "permitted illicit drug use and distribution, including cocaine, marijuana, and other controlled substances, between club members, associates, friends, and supporters of the KMC." (*Id.*).

The Government also cites the Indictment's allegations that the "manner and means" by which Defendants agreed to conduct and participate in the conduct of the KMC enterprise to further the goals of the enterprise and achieve its purposes included the following. Members and associates "purchased, stored, maintained, and circulated firearms, and agreed that club members and clubhouses would possess and contain firearms, for use in criminal activity by members and associates, in order to defend KMC members and associates, and to retaliate against rival motorcycle gangs and other rivals who pose a threat to the KMC." (*Id.* at ¶ 5). They also "agreed that the club and club

members would maintain certain premises including but not limited to KMC clubhouses for the manufacture, importation, receiving, concealment, selling, and distribution of controlled substances." (*Id.*).

The Government additionally cites Overt Act 37, which "places four (4) of the remaining charged defendants directly inside the South Buffalo KMC clubhouse on or about August 3, 2014." (*Id.* at ¶ 6).

## 2.    Physical Evidence

The Government also maintains that discovery produced to Defendants thus far reveals the nature of the charges against Defendants set forth in Counts 45 and 46. (*Id.* at ¶¶ 7-11). The discovery includes the following:

- an American flag recovered from the KMC South Buffalo Chapter clubhouse during the execution of a search warrant on August 26, 2015, which was signed by Defendants Willson, Koszuta, Scanlon, Williams, McIndoo, Stacharczyck, Myrtle, and Olejniczak;

- a KMC South Buffalo Chapter clubhouse "members only" sign-in ledger, dated between 1999 through 2015, that was found inside a safe within the South Buffalo KMC chapter clubhouse;

- photographs, which were found in the safe, that depicted a number of Defendants, and, in some instances, were labeled with the address of the KMC South Buffalo Chapter clubhouse;

- a receipt for the purchase of two firearms by McIndoo on August 13, 2010, which was also found in the safe;

- notes, dated September 14, 2013, listing KMC members who had "house keys," which was also found in the safe;

- a log of payments of KMC South Buffalo Chapter clubhouse dues, which was also found in the safe;

- a list of phone numbers dated "Spring (98)," which was also found in the safe.

(*Id.* at ¶¶ 7-11).

### 3. Defendants' Prior Statements

The Government also cites various prior statements by certain Defendants as sources of information that, in its view, reveal the nature of the charges against Defendants in Counts 45 and 46.

The Government points to Scanlon's grand jury testimony on July 15, 2015, when he stated that he had been to the KMC South Buffalo Chapter clubhouse, and on September 16, 2015, when he indicated that he attended a KMC meeting in Buffalo with Daniel "DJ" Szymanski and other individuals. (*Id.* at ¶¶ 12-13).

The Government also refers to Pirk's joint interview with Enix and the FBI on December 14, 2011, during which Pirk stated that he was at the KMC South Buffalo Chapter clubhouse on Septembers 6, 2014—the day on which Szymanski and Maue were killed—and had seen those two individuals there before they died. (*Id.* at ¶ 14). During the same interview, Enix "made statements to the FBI . . . that serve to confirm that [he] . . . was at the South Buffalo KMC Chapter clubhouse when . . . Caruso was armed and confronted . . . Pirk, as alleged in Count 1, Overt Act 37 of the Indictment." (*Id.* at ¶ 18).

The Government cites to McIndoo's testimony during his detention hearing that he had been to the KMC South Buffalo Chapter clubhouse, and his interview on November 4, 2015, by FBI agents, when he said that he was a member of several KMC chapters, including the South Buffalo Chapter. (*Id.* at ¶ 15).

According to the Government, Stacharczyck also stated that he has been to the KMC South Buffalo Chapter clubhouse in August 2014 and observed Caruso, Pirk, and Dekay there as well; Stacharczyck also admitted to using cocaine at KMC events. (*Id.* at ¶ 16). Willson, in a post-arrest interview, stated that he had been a KMC member for 19 years. (*Id.* at ¶ 17).

### 4.    Facebook Activity and Other Evidence

The Government also highlights various Facebook messages from Enix's account and the private KMC group for which he was the group administrator, which, according to the Government, indicate that he "organizes payment of taxes for the clubhouses in New York, including the Buffalo clubhouse." (*Id.* at ¶ 19). The Government points to Jenkins' Facebook activity, which includes messages indicating that he has been to Buffalo. (*Id.* at ¶ 20).

The Government also mentions that "[m]ultiple witnesses are expected to testify, in sum and substance, that drugs, such as cocaine, have been used in the South Buffalo KMC Chapter clubhouse dating back to the 1990s, and that firearms are maintained in the clubhouse." (*Id.* at ¶ 21). It anticipates making disclosures regarding these witnesses before trial. (*Id.*).

### B.    Defendants' Supplemental Submissions

Defendants argue, in the main, that the Government's supplemental submission offers little if anything that would allow them to prepare a defense to the charges set forth in Counts 45 and 46. (*See* Dkt. 743 (Pirk); Dkt. 745 (Scanlon); Dkt. 746 (Enix); Dkt. 752 (Osborne); Dkt. 757 (Jenkins); Dkt. 760 (McIndoo)). Defendants argue that the

supplemental submission serves to highlight the unfairly broad nature of the allegations and limited supporting factual allegations, given that the supplemental submission focuses on innocuous activities such as signing an American flag and visiting the clubhouse. (*E.g.*, Dkt. 721 at 4 (Scanlon); Dkt. 743 at 4-7 (Pirk); Dkt. 746 at 3-6 (Enix)). Defendants contend that the submission may—at best—connect them to the clubhouse, but merely showing a connection to the KMC South Buffalo Chapter clubhouse is insufficient. (Dkt. 757 at 4 (Jenkins); Dkt. 760 at 7-8 (McIndoo)). Osborne further contends that "the Government does not allege any conduct of Mr. Osborne relevant to charges 45-46 in the indictment. . . . In fact, the Government . . . does not even mention Mr. Osborne." (Dkt. 752 at 2).

Pirk additionally argues that particularization of Count 46 is necessary because of Count 2, which is a § 924(c) charge related to the RICO conspiracy charged in Count 1:

> [W]ithout particularization, a juror could convict a defendant of Count 2 on the basis that the defendant possessed a firearm to further the RICO conspiracy (which specifically includes maintaining the South Buffalo as a drug-house). Then the juror could convict the same defendant of count 46 on the identical basis that the defendant possessed a firearm to further the maintenance of the South Buffalo clubhouse as a drug house.

(Dkt. 743 at 7-8).

McIndoo also challenges the Government's assertion that particularization is unnecessary because Defendants "know what they did," arguing that it is inconsistent with the presumption of innocence. (Dkt. 760 at 4-5). He persists in his argument that the Government "nearly complete[ly] reli[es] on membership in the KMC as the foundation for criminal liability under counts 45 and 46." (*Id.* at 11).

C. **Defendants Are Presumed Innocent and, Therefore, Ignorant of the Facts on Which the Charges Are Based**

According to the Government, particularization of these counts is unnecessary because "each defendant is inherently in the best position to know what his relationship is with a particular location, such as the KMC South Buffalo Chapter clubhouse (Counts 45-46), and what, if any, involvement he has had with controlled substances and firearms." (Dkt. 721 at ¶ 2). McIndoo specifically opposes this argument. (*See, e.g.*, Dkt. 760 at 4-5).

Courts have rejected the argument advanced by the Government as inconsistent with the presumption of innocence: "Since [a] defendant is presumed innocent because of his plea of not guilty, it cannot be assumed that he knows the particulars sought and he can only be considered 'ignorant of the facts on which the pleader founds his charges'." *United States v. Tucker*, 262 F. Supp. 305, 307 (S.D.N.Y. 1966) (quoting *Fontana v. United States*, 262 F. 283, 286 (8th Cir. 1919)); *accord United States v. King*, No. 94 Cr. 455 (LMM), 1995 WL 146252, at *1 (S.D.N.Y. Apr. 4, 1995) ("[A] defendant being presumed to be innocent, it must be assumed that he is ignorant of the facts on which the pleader founds his charges." (alteration and citation omitted)); *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. 376, 379 (N.D.N.Y. 1977) ("[I]t is no answer that the defendant should know the facts demanded, for the defendant is presumed to be innocent; in any event, the Bill of Particulars is aimed at the facts as alleged by the Government, rather than as they actually exist."); *United States v. Burgio*, 279 F. Supp. 843, 846 (S.D.N.Y. 1968) (same); *United States v. Spur Knitting Mills, Inc.*, 187 F. Supp. 653, 654 (S.D.N.Y. 1960)

(same); *United States v. J. M. Huber Corp.*, 179 F. Supp. 570, 573 (S.D.N.Y. 1959) (characterizing the same argument as "one which long ago ought to have been laid at rest"). Accordingly, the Court rejects the Government's opposition to the extent that it is based on this faulty argument. Defendants are presumed innocent, and any purported gaps in the Government's ability to specify the nature of its charges cannot be filled with allegations concerning Defendants' knowledge.

### D.    Particularization of Counts 45 and 46 is Not Warranted

Having reviewed the totality of the information available to Defendants—including the Indictment and the materials attached to and referenced in the Government's supplemental submission—the Court concludes that a bill of particulars is not warranted. In reaching this conclusion, the Court is sensitive to the notion that "the Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories." *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citing *United States v. Torres*, 901 F.2d 205, 233-34 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010)). Defendants' requests for particularization of Counts 45 and 46, are, in essence, discovery requests concerning precisely how Defendants committed the crimes charged. For example, with respect to Count 45, Osborne requests, the "day, time, and place, of any conduct material to count[] . . . 45," the "nature, volume, and weight of any controlled substance relevant" to that count, and "[a]ny scientific tests related to any

controlled substance related to" that count. (Dkt. 387 at ¶ 17). Enix, Pirk, Caruso, and

Jenkins request particularization of Count 45 as follows:

> a.    The manner by which [Defendant] himself specifically permanently
> or temporarily maintained the premises described in Count 45;
>
> b.    The specific controlled substance or substances that [Defendant]
> allegedly manufactured, distributed, or used, including the identity of the
> controlled substance and quantity;
>
> c.    How [Defendant] manufactured, distributed, or used each of the
> specific controlled substances;
>
> d.    How [Defendant] allegedly manufactured, distributed, or used each of
> the alleged controlled substances;
>
> e.    The date when [Defendant] allegedly manufactured, distributed, or
> used each of the controlled substances;
>
> f.    The date (or dates) when [Defendant] allegedly maintained the
> premises; and
>
> g.    Whether [Defendant] allegedly permanently maintained the premises
> or temporarily (and if temporarily, when his alleged maintenance began and
> ended).

(Dkt. 392-7 at 16-18 (Enix); *see also* Dkt. 434 at ¶ 47 (Pirk); Dkt. 467 at ¶ 32 (Caruso);

Dkt. 522 at ¶ 159 (Jenkins)). To require particularization in the manner sought by

Defendants would amount to requiring a preview of the Government's case—and the

questions posed by Defendants seek disclosure of information that the Government need

not prove in order to sustain its burden.

Based on the available information, Defendants are not in danger of mistaking the

charges against them in Counts 45 and 46. With respect to Count 45, the Indictment tracks

the language of the relevant statute, 21 U.S.C. § 856(a), which provides that it shall be

unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). The same is true of Count 46; it tracks the language of 18 U.S.C. § 924(c)(1)(A)(i), which punishes "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A)(i).

Further, the Indictment's "introduction" to the RICO conspiracy charge provides additional detail about how all KMC clubhouses were used and maintained as premises for drug dealing. For example, the Indictment alleges that "KMC chapter clubhouses permitted illicit drug use and distribution, including cocaine, marijuana, and other controlled substances, between club members, associates, friends, and supporters of the KMC." (Dkt. 33 at ¶ 18). The "introduction" also provides additional detail about firearms activity at all KMC clubhouses. For example, the Indictment alleges the following: "KMC chapter clubhouses maintained firearms and ammunition to defend the KMC against rival motorcycle gangs and to protect club proceeds" (*id.* at ¶ 16), and "[i]ndividual KMC members and associates maintained access to firearms, including handguns, rifles, and shotguns" (*id.* at ¶ 21).

The Indictment alleges that the drug premises crime in Count 45 and § 924(c) count in Count 46 both began "on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of . . . [the] Indictment" in March 2016. (Dkt. 33 at 63). This period of ten years (or possibly more) is longer than any period alleged in the Indictment's other drug premises counts and related § 942(c) counts (Counts 37 through

- 16 -

44). (*See id.* at 58-59 (Counts 37 and 38 alleging four-year span), 59-60 (Counts 39 and 40 alleging six-year span), 61 (Counts 41 and 42 alleging four-year span), 62 (Counts 43 and 44 alleging four-year span)). Also unlike any of the other drug premises and related § 924(c) counts, Counts 45 and 46 name all Defendants. (*Compare id.* at 58-62, *with id.* at 63-64). Nonetheless, the Court does not conclude that either the date range or the inclusion of all Defendants necessitates the production of a bill of particulars, particularly given the information concerning these counts that the Government has provided to Defendants in an alternative form (and will provide when it produces Jencks material well in advance of trial (*see* Dkt. 721 at ¶ 21; *see also* Dkt. 662)).

Although cases specifically analyzing the extent to which particularization should be required for a drug premises offense appear to be scarce, the Court's research reveals that courts deny bills of particulars on drug premises counts even when those counts cover several years. *See United States v. Kendrick*, No. 10-CR-6096-FPG, 2015 WL 500805, at *15-16 (W.D.N.Y. Feb. 5, 2015) (denying requested bill of particulars for § 856 counts); *United States v. Taylor*, No. 11CR85A, 2012 WL 12941960, at *3 (W.D.N.Y. Mar. 9, 2012) (denying bill of particulars for § 856 count alleging a four-year time span); *United States v. Ramos-Cruz*, No. 11-CR-151-A, 2014 WL 3533421, at *2 (W.D.N.Y. July 16, 2014) (denying particularization on § 856 count where indictment alleged the time span was from "a date unknown" to 2009); *see also United States v. Li*, No. 3:16-CR-194, 2017 WL 590275, at *2 (M.D. Pa. Feb. 14, 2017) (denying requested particularization of § 856 counts where the count listed the specific address of the alleged drug-involved premises, noted the relevant date range, recited the elements of the offense, and cited to the relevant

statute); *United States v. Hennings*, No. 02-20332-M1/V, 2003 WL 2005492, at *3 (W.D. Tenn. Feb. 11, 2003) ("An order for a bill of particulars that provides information about the *manner* in which the violation [of 21 U.S.C. § 856] occurred would impermissibly demand evidentiary detail and unduly intrude upon the government's theories."). The same is true of § 924(c) counts: "Courts routinely deny requests for further particularization of 924(c) counts, including specific dates and places of firearms possession, that span a period of time." *United States v. McCoy*, 14-Cr-6181W, 2016 WL 5335443, at *5 (W.D.N.Y. Sept. 21, 2016); *see also United States v. Simmons*, No. 13-CR-6025CJS, 2016 WL 285176, at *16 (W.D.N.Y. Jan. 22, 2016) (collecting cases denying particularization of § 924(c) counts), *report and recommendation adopted*, No. 13-CR-6025, 2016 WL 1127802 (W.D.N.Y. Mar. 23, 2016).

While the time frame alleged is broad and the number of defendants significant, Defendants have not convinced the Court that those factors push Counts 45 and 46 over the line to require further particularization—or, more to the point, that the particulars requested by Defendants would be appropriate. The underlying allegations in the Indictment concerning the RICO conspiracy cover the same time frame, and the Government's supplemental submission concerning Counts 45 and 46 provides additional evidentiary detail. (Dkt. 721). The Government highlights portions of the Indictment, physical evidence, Defendants' prior statements, and Defendants' Facebook activity (summarized above), which are available to the Defendants. Moreover, in several of its prior submissions, the Government has represented that the only significant items that it has not yet disclosed to Defendants are grand jury transcripts of witnesses who testified

before the grand jury, witness statements, and FBI 302 summaries of witness interviews. (*E.g.*, Dkt. 437 at 25; Dkt. 451 at 9-10; Dkt. 452 at 11). The Government represents that "[d]isclosures related to . . . witnesses will be made prior to trial in accordance with the Protective Order" (Dkt. 721 at ¶ 21 (citing Dkt. 662)), which allows for early disclosure of such material. In light of the previous and anticipated disclosures by the Government, the Court rejects the notion that Defendants will be surprised by the charges against them in Counts 45 and 46. "It is the defendant's burden to show that a bill of particulars is necessary." *United States v. Nagi*, No. 15-CR-148-A, 2017 WL 2240258, at *9 (W.D.N.Y. May 23, 2017). Considering the totality of information available to Defendants, Defendants have not met their burden.

The Government points out that Defendants are charged additionally as accomplices, in violation of 18 U.S.C. § 2. (Dkt. 721 at ¶ 22). That statute proscribes the aiding and abetting the commission of an offense, as well as causing another to do an act which would be an offense. *See* 18 U.S.C. § 2. The Government also advises Defendants that they may be liable under a *Pinkerton* theory of liability. (Dkt. 721 at ¶ 23). Under that theory, a "conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Romero*, 897 F.2d 47, 51 (2d Cir. 1990) (internal quotation marks omitted). These alternative theories of liability undercut Osborne's assertion (Dkt. 752 at 2) that the Government must provide a bill of particulars because the Government's supplemental submission lacks information concerning Counts 45 and 46

that is specific to him.  It seems apparent that the Government intends to proceed on a

theory of aider and abettor liability, or *Pinkerton* liability, as to Osborne.  (*See* Dkt. 721 at

¶ 21).  For example, the Government states:

> [W]hile every defendant remaining in this case, *with the possible exception*
> *of defendant Robert Osborne*, has a personal connection to the South Buffalo
> KMC clubhouse as demonstrated by: membership in the South Buffalo KMC
> Chapter at various times; presence in the South Buffalo KMC Chapter on
> various occasions; control via position of authority at either the Chapter,
> Region, and/or National level; and/or relationship to other KMC members, *a*
> *personal connection to the physical structure of the clubhouse on Eagle*
> *Street is not required for criminal liability to extend to all charged*
> *defendants pursuant to Title 18, United States Code, Section 2. . . .*

(*Id.* (emphasis added)).  Under either an aider and abettor theory, or a *Pinkerton* theory,

whether a defendant—such as Osborne—personally visited or maintained the KMC South

Buffalo Chapter clubhouse would be irrelevant.  In any event, requiring the Government

to specify its theory of liability with respect to each Defendant (including Osborne) is not

within the proper scope of a bill of particulars.  In other words, Counts 45 and 46 plainly

adequately allege violations of the statutes set forth therein.  The Government has set forth

in its supplemental submission the evidence that it is relying upon to support the charges

in Counts 45 and 46, with the primary exception of witness statements that will be produced

shortly (or are in the process of being produced).  For some defendants, such as Osborne,

it is apparent that the basis for any claimed liability against him is vicarious under a

*Pinkerton* theory or as an aider and abettor.  But requiring the Government to further

delineate its theory of liability in this regard would run afoul of proper particularization.

In light of the foregoing, the Court concludes that the Government has adequately

notified Defendants concerning the nature of the drug premises charge in Count 45 and the

related § 924(c) charge in Count 46, and that the Government's disclosures to date allow Defendants to prepare a defense, and avoid prejudicial surprise at trial and double jeopardy concerns. Accordingly, the Court denies Defendants' motions for a bill of particulars regarding Counts 45 and 46.

### E.    Counts 2 and 46 Are Not Multiplicitous

To the extent that Pirk's response to the Government's supplemental submission suggests a potential argument that a bill of particulars is warranted because Count 2 is multiplicitous of Count 46, that argument is unpersuasive. (*See* Dkt. 743 at 7-8). "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *Id.* at 146. When the same statutory violation is charged multiple times, as is the case with Counts 2 and 46, "the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004) (quoting *Bell v. United States*, 349 U.S. 81, 83-84 (1955)). According to the Second Circuit, the appropriate unit of prosecution under § 924(c) is the underlying predicate offense rather than the number of firearms. *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir. 1993).

Count 2 is a different unit of prosecution (RICO conspiracy) than Count 46 (using and maintaining premises for drug dealing). Thus, the Court rejects the argument that a

bill of particulars is needed in light of the multiplicity of Counts 2 and 46. Further, as the Court stated in its prior Decision and Order, the Court is mindful of Defendants' concerns about the alleged multiplicity of the § 924(c) counts, but those issues can be appropriately addressed at trial and do not justify further particularization to be ordered by the Court. (Dkt. 688 at 48-49).

### III.    Counts 34, 35, and 36

Caruso seeks particularization of Counts 34 and 35, which charge him with distribution of cocaine and marijuana, respectively. (Dkt. 467 at ¶¶ 25-26). Count 34 charges Caruso with distribution of cocaine "[b]eginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown" in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. (Dkt. 33 at 57). Similarly, Count 35 charges Caruso with distribution of marijuana during that same time period, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2. (*Id.*). Count 36 contains the § 924(c) count related to Counts 34 and 35. (*Id.* at 58). For all three crimes, the relevant timeframe is between 2010 until September 2014, and the location is the Western District of New York. (*Id.* at 57-58).

Caruso seeks the following particularization of Counts 34 and 35:

a.      How Mr. Caruso knowingly, intentionally and unlawfully possessed with intent to distribute, and distribute a quantity of cocaine [or marijuana];

b.      Whether the possession was actual or constructive;

c.      The date when Caruso allegedly possessed with the intent to distribute cocaine [or marijuana]. (The Indictment charges "on or before 2010 and continuing in or about September, 2014").

(Dkt. 467 at 10-11). Caruso seeks the following particularization of Count 36:

>    a.    The specific drug trafficking acts defendant allegedly committed and furthered by and while knowingly possessing a firearm in furtherance of that crime;

>    b.    The type, quantity, and composition of the drug or drugs Mr. Caruso allegedly trafficked;

>    c.    The make, model, caliber, and serial number (or numbers) of the firearm or firearms Mr. Caruso allegedly used in furtherance of a drug trafficking crime;

>    d.    The specific date (or dates) of the alleged drug trafficking acts by Mr. Caruso and alleged knowing possession of a firearm during the alleged drug trafficking crime; and

>    e.    The specific location of the alleged drug trafficking acts by defendant and alleged knowing possession of a firearm in furtherance of that drug trafficking crime.

(*Id.* at 11).

### A.    Summary of the Government's Additional Submission

In its sealed supplemental submission concerning Caruso, the Government cites a variety of information in support of its contention that the Court should not order particularization of Counts 34 through 36 and 45 and 46. (*See* Dkt. 725). Having already considered the need for particularization of Counts 45 and 46 as set forth above, the Court addresses only Counts 34 and 36.

The Government points to information adduced through Caruso's related federal prosecution for being a felon in possession of a firearm. (*Id.* at ¶ 6). In that case, docketed under 14-CR-203, Caruso pleaded guilty; Overt Acts 32 and 35 in the instant case are based on the same conduct. (*Id.*). Before trial in that case, the Government moved to revoke

Caruso's release based on allegations that he had tested positive for marijuana on 12 occasions, in violation of his conditions of release; the motion was denied. (*Id.* at ¶¶ 10, 11). Also before trial, the Government provided Caruso a witness list, pretrial memorandum, and Jencks Act materials that overlap with this case; that is, some of the same witnesses will be called in this case, and Caruso already has certain disclosures relating to those witnesses. (*Id.* at ¶ 12). The Government also cites to Caruso's own statements (*id.* at ¶ 3) and statements of witnesses as examples of materials that indicate Caruso's drug and gun involvement as relevant to Counts 34-36. (*See id.* at ¶¶ 15-21). As the Government's supplemental submission is filed under seal (*see* Dkt. 695), the Court declines to summarize the contents in detail.

Caruso did not respond to the Government's additional submission.

**B.     Particularization of Counts 34 through 36 is Not Warranted**

As an initial matter, as the Court noted in its prior Decision and Order, Caruso's motion for a bill of particulars cited nothing but Rule 7(f), thus arguably falling woefully short of his burden to show that the information is necessary to the preparation of his defense. *See United States v. Williams*, 88 F. Supp. 3d 117, 120 (N.D.N.Y. 2015) (denying request for bill of particulars where defendant cited "nothing more than Rule 7(f)" and had "made no attempt to demonstrate need to prepare a defense or avoid surprise at trial"); *see also Nagi*, 2017 WL 2240258, at *9 (explaining that the defendant bears the burden to show that a bill of particulars is necessary). Moreover, he did not take the opportunity to respond to the Government's supplemental submission.

Even setting aside the issue of Caruso's failure to meet his burden, a review of the totality of the information available to Caruso—such as the Indictment and the materials attached to and described in the Government's supplemental submission—leads the Court to conclude that a bill of particulars is not warranted for Counts 34 through 36. The Government's supplemental submission is replete with specific references to instances in which Caruso allegedly distributed cocaine and marijuana and instances in which he possessed firearms in furtherance of those distribution activities. (*See* Dkt. 725). Moreover, in Counts 34 through 36, the Indictment tracks the specific language of the relevant statutes and specifies the relevant timeframes, and location of the offenses. (*See* Dkt. 33 at 57-58). In short, the Government has adequately notified Caruso of the drug distribution charges in Counts 34 and 35, as well as the § 924(c) charge in Count 36 so that he may properly prepare a defense, and avoid prejudicial surprise at trial and double jeopardy concerns. Therefore, the Court denies Caruso's motion for a bill of particulars.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motions for bills of particulars with respect to Counts 34 through 36 and 45 and 46.  (Dkt. 378 (Stacharczyck); Dkt. 382 (Wood); Dkt. 383 (McIndoo); Dkt. 385 (Scanlon); Dkt. 387 (Osborne); Dkt. 392 (Enix); Dkt. 394 (Olejniczak); Dkt. 400 (Williams); Dkt. 434 (Pirk); Dkt. 467 (Caruso); Dkt. 522 (Jenkins)).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 19, 2017
      Rochester, New York