UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

ANDRE JENKINS a/k/a Little Bear,

          Defendant.

---

DECISION AND ORDER

1:15-CR-00142 EAW

## BACKGROUND

Defendant Andre Jenkins ("Jenkins") is one of 12 remaining defendants[1] named in a 46-count Second Superseding Indictment ("Indictment") (Dkt. 33) returned on March 16, 2016, alleging various crimes, including a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), in connection with the operation of the Kingsmen Motorcycle Club. Jenkins is charged in the following nine counts:

    Count 1:    RICO conspiracy in violation of 18 U.S.C. § 1962(d);

    Count 2:    Possession of firearms in furtherance of crime of violence (the RICO conspiracy charged in Count 1) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2;

    Count 19:    Murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and 2;

    Count 20:    Murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and 2;

---

[1] Four defendants—Edgar Dekay, II a/k/a Ed a/k/a Special Ed (Dkt. 412), Thomas Koszuta a/k/a Kazoo (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)—have pleaded guilty.

| | |
|---|---|
| Count 21: | Possession and discharge of firearm in furtherance of crime of violence (the murder in aid of racketeering charged in Count 19) in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j) and 2; |
| Count 22: | Possession and discharge of firearm in furtherance of crime of violence (the murder in aid of racketeering charged in Count 20), in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j) and 2; |
| Count 23: | Felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); |
| Count 45: | Using and maintaining a premises for drug dealing in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and |
| Count 46: | Possession of firearms in furtherance of drug trafficking crime (the drug premises charge in Count 45) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. |

On January 17, 2017, this Court set a day-certain trial scheduled to commence on January 16, 2018. (Dkt. 445).

Jenkins' omnibus pretrial motions, filed on March 7, 2017, included a motion to dismiss on the ground that this federal prosecution violates the Double Jeopardy Clause of the Fifth Amendment. (Dkt. 522 at ¶¶ 79-91). Jenkins' motion was based on his prosecution by the Niagara County District Attorney's Office and his conviction in New York State court for one count of Murder in the First Degree in violation of N.Y. Penal Law § 125.27(1)(a)(viii), two counts of Murder in the Second Degree in violation of N.Y. Penal Law § 125.25(1), and one count of Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03(3). The state court charges arose out of the alleged murders of Paul Maue and Daniel "DJ" Szymanski on September 6, 2014. The alleged murders constitute some of the predicate acts alleged in this case as part of the

RICO conspiracy count, and the charges in Counts 19 through 23 are based on the facts surrounding the alleged murders.

In his motion to dismiss on double jeopardy grounds, Jenkins recognized that the "dual sovereignty doctrine may allow two separate sovereigns to prosecute a defendant who violates the laws of both sovereigns in a single act" (Dkt. 522 at ¶ 83), but he argued that the doctrine did not apply in this case because the state prosecution was a tool of the federal government (*id.* at ¶¶ 79-91). Jenkins argued in his initial motion papers that the Government should be required to produce discovery so that Jenkins could "more appropriately be able to prepare and argue the instant motion" (*id.* at ¶ 88), and he requested an evidentiary hearing (*id.* at ¶ 91).

On April 7, 2017, the Government filed its opposition to Jenkins' omnibus motions. (Dkt. 554). In response to Jenkins' double jeopardy argument, the Government argued that under the "same elements" test enunciated by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the offenses for which Jenkins was convicted in state court were different than the offenses with which he was charged in this Indictment. (Dkt. 554 at 31-40). The Government also argued that Jenkins' argument that the dual sovereignty doctrine did not apply was without basis, and neither discovery nor an evidentiary hearing was warranted. (*Id.* at 40-46).

On May 5, 2017, Jenkins filed reply papers in further support of his omnibus pretrial motions, and, among other things, he argued that "the acts for which Mr. Jenkins was previously convicted are the same acts which the government intends to prove at the time of trial." (Dkt. 575 at 11). Jenkins maintained his argument that he was entitled to

discovery and a hearing on the dual sovereignty issue, but he failed to respond to the Government's argument about the same elements test under *Blockburger*. (*Id.* at 10-12).

Oral argument was held before the undersigned on May 9, 2017. (Dkt. 755). Because Jenkins never responded to the Government's argument that the state and federal offenses involved different elements under the *Blockburger* test, and because the Court did not believe Jenkins had met his burden on the dual sovereignty issue, the Court allowed Jenkins to file supplemental briefing "addressing whether the offenses of Defendant's state court convictions are the same in fact and in law as those charged in the federal indictment, such that double jeopardy is violated." (Dkt. 585; *see* Dkt. 755 at 130-33). The Court twice extended the deadlines for Jenkins' supplemental briefing, at the request of defense counsel and without objection from the Government. (Dkt. 601; Dkt. 625).

On June 16, 2017, Jenkins filed two separate memoranda in support of his motion to dismiss on double jeopardy grounds. (Dkt. 637; Dkt. 636). One of the submissions dealt with the dual sovereignty issue, and, among other things, included transcripts from the state court proceedings and a declaration from Jenkins' state court defense attorney. (Dkt. 637). The other submission addressed the issue that caused the Court to allow supplemental briefing: whether the offenses charged in state court and federal court were the same. (Dkt. 636). The Government filed its response on July 14, 2017. (Dkt. 673).

On July 24, 2017, this Court issued its Decision and Order denying Jenkins' motion to dismiss on double jeopardy grounds. (Dkt. 689). The Court rejected Jenkins' argument that the dual sovereignty doctrine did not apply, concluding that Jenkins had failed to show that the state was acting as a tool of the federal government as necessary to bring the case

within the so-called *Bartkus* exception. (*Id.* at 6-18). The Court further found that the crimes with which Jenkins is charged in the federal prosecution are different in law under the "same elements" test articulated in *Blockburger*, and, as a result, the Double Jeopardy Clause did not bar the federal prosecution. (*Id.* at 18-22). The Court noted that Jenkins never argued that the offenses for which he was convicted in state court were the same "in law" as the offenses with which he is charged in federal court. (*Id.* at 19). Instead, Jenkins argued that the Court should "examin[e] the allegations of the indictment rather than simply review[] terms of the statutes" and conclude that double jeopardy was violated because the federal prosecution involves the same conduct as the state prosecution. (Dkt. 636 at 17). But, as the Court noted in its Decision and Order, the "same conduct" test advanced by Jenkins was an inaccurate statement of the law.

On July 28, 2017, Jenkins filed a Notice of Appeal from the Court's Decision and Order concerning double jeopardy. (Dkt. 699). The Government eventually moved to expedite that appeal, and the Second Circuit granted the Government's motion. *See* Motion Order, *United States v. Willson (Jenkins)*, No. 17-2372 (2d Cir. Nov. 7, 2017). Briefing is scheduled to be completed by December 18, 2017, with oral argument to occur shortly thereafter. *See id.* However, there is no guarantee that the Second Circuit will render a decision before the trial begins on January 16, 2018, and counsel for Jenkins has argued that requiring "gratuitous trial preparation" is unreasonable. (Dkt. 829 at ¶¶ 9, 17). Thus, in connection with the defendants' severance motions (which were initially argued on October 24, 2017), the Court raised the question of whether it could proceed to trial with Jenkins if the appeal remains undecided and asked for briefing on the issue. (Dkt. 837).

On October 30, 2017, the Government filed its memorandum advancing two arguments in support of maintaining jurisdiction and proceeding with the trial involving Jenkins, regardless of whether the Second Circuit has rendered a decision on the interlocutory appeal by January 16, 2018. (Dkt. 850). First, the Government contends that Jenkins will not "irreparably los[e]" any rights if this Court retains jurisdiction because the offenses charged in the federal indictment go far beyond the factual issues involved with the state court prosecution so that, even if Jenkins prevails on appeal, he will still be tried for the RICO conspiracy and some of the other counts in the federal Indictment. (*Id.* at 6-10). Second, the Government argues that Jenkins' appeal is frivolous and dilatory, and therefore this Court may retain jurisdiction. (*Id.* at 10-14).

Jenkins filed a memorandum in response to the Government's submission on November 7, 2017. (Dkt. 857). In that filing, Jenkins recognized that the scope of the federal prosecution exceeded the state prosecution:

> [T]here are counts and conduct (as noted by the Court, "including a RICO conspiracy and a charge of using and maintaining a premises for drug trafficking both spanning a 10-year time period,") that could proceed to trial even as those counts specific to the murders and attendant firearm possession counts are held in abeyance pending appellate review.

(Dkt. 857 at 2). Nonetheless, Jenkins argued that it would be an inefficient use of resources to sever the counts allegedly barred on double jeopardy grounds. (*Id.* at 2-3). He further argued that his double jeopardy argument was neither dilatory nor frivolous, and therefore he should not proceed to trial until after the Second Circuit resolves the appeal. (*Id.* at 3-4).

Further oral argument was held before the undersigned on November 8, 2017, after which the Court stated that it found Jenkins' appeal legally frivolous, and therefore it would retain jurisdiction and proceed to trial with Jenkins as scheduled on January 16, 2018, even if the appeal was still pending before the Second Circuit. This Decision and Order sets forth the Court's written findings to support its finding of frivolousness.

## ANALYSIS

### I.     LEGAL AUTHORITY FOR THIS COURT TO RETAIN JURISDICTION

#### A.     Appellate Court's Jurisdiction

Generally, a circuit court lacks jurisdiction to hear an appeal from a decision of the district court in the absence of a final judgment. *See* 28 U.S.C. § 1291 (providing for appellate jurisdiction over "appeals from all final decisions of the district courts of the United States"). In *Abney v. United States*, 431 U.S. 651 (1977), the Supreme Court recognized an exception to this general rule, holding that a pretrial order rejecting a claim of double jeopardy is a "final decision" within the meaning of 28 U.S.C. § 1291, and thus immediately appealable. *Id.* at 662. The Supreme Court reasoned as follows:

> [T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense. . . . [T]he guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once

for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction.

*Id.* at 660-61.

Not all double jeopardy claims support appellate jurisdiction. In *United States v. Tom*, 787 F.2d 65 (2d Cir. 1986), the Second Circuit concluded that it lacked jurisdiction over an interlocutory appeal from a pretrial order denying a motion to dismiss predicate acts from a RICO indictment on double jeopardy grounds, where the defendant was charged with at least two other predicate acts. *Id.* at 68. In that circumstance, "the defendant will be tried on the count even if the challenged portion of the count is stricken." *Id.* Therefore, "obliging him to proceed with the trial and pursue his claim only on appeal from conviction, should one occur, does not forfeit an opportunity to vindicate a right to avoid trial on that count." *Id.* In reaching that conclusion, the Second Circuit distinguished that circumstance—a motion targeting a predicate act—from one challenging an entire count: "Where a defendant challenges an *entire count* on grounds of former jeopardy, lack of an interlocutory appeal would prevent all opportunity to vindicate the asserted right to avoid trial on that count." *Id.* (emphasis added); *see also United States v. Witten*, 965 F.2d 774, 776 (9th Cir. 1992) (appellate court did not have jurisdiction over interlocutory appeal from denial of motion to dismiss on double jeopardy grounds predicate act in RICO count because "[e]ven if the alleged predicate act were dismissed, the appellants would still face trial for conspiracy to violate RICO"); *cf. United States v. Ginyard*, 511 F.3d 203, 208 (D.C. Cir. 2008) (concluding that the appellate court had jurisdiction over appeal of the denial of motion to dismiss one count of multi-count indictment "[b]ecause the Double

Jeopardy Clause guarantees the right not to be twice put to trial 'for the same offense,' a defendant may no more be forced to 'run the gauntlet' a second time on a single count—which charges a single offense—than he may be required to do so on an entire indictment").

Thus, at a minimum and as Jenkins concedes, the Court could sever the RICO conspiracy count and retain jurisdiction, since only some of the predicate acts involved with that count involved the alleged murders that were the subject of the state court prosecution.[2]

### B. This Court's Ability to Retain Jurisdiction Over All Counts

"A district court may retain jurisdiction and proceed to trial, despite the pendency of a defendant's interlocutory double jeopardy appeal, when the appeal is frivolous." *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993). This principle is sometimes referred to as the "*Dunbar* rule" based on the Fifth Circuit's *en banc* decision in *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980), where the court held that "an appeal from the denial of a frivolous double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous." *Id.* at 986.

The reasoning behind the *Dunbar* rule is to prevent a criminal defendant from unilaterally obtaining a trial continuance at any time prior to trial "by merely filing a double jeopardy motion, however frivolous, and appealing the trial court's denial thereof." *Id.* at

---

[2]  Along the same lines, the Court could sever and retain jurisdiction over Count 2 (the § 924(c) count related to the RICO conspiracy), as well as Counts 45 and 46, which are unrelated to the alleged murders.

988. Thus, the district court must make written findings determining whether the double jeopardy motion is frivolous or non-frivolous, and if frivolous, "the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case." *Id.* As explained by the Second Circuit:

> the applicable 'divestiture of jurisdiction rule is not based upon statutory provisions or the rules of civil or criminal procedure. Instead, it is a judge made rule originally devised in the context of civil appeals to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'

*United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989) (citations omitted). Thus, "a district court may retain jurisdiction to proceed with a trial, despite the pendency of a defendant's interlocutory double jeopardy appeal, where the appeal is found to be frivolous." *Id.* at 539 (collecting cases from other circuits); *see also United States v. Serrano*, No. 16CR169, 2017 WL 590321, at *1 (S.D.N.Y. Feb. 14, 2017) (concluding that appeal would be frivolous where trial judge declared a mistrial following a hung jury, and jeopardy had not terminated), *appeal dismissed*, 856 F.3d 210 (2d Cir. 2017), *petition for cert. filed*, *Serrano v. United States*, No. 17-5165 (U.S. Jul. 11, 2017); *United States v. Torres*, No. S1 94 CR. 392 (LAP), 1995 WL 404825, at *1 (S.D.N.Y. July 6, 1995) (finding appeal frivolous and proceeding to retrial).

## II.  FRIVOLOUSNESS ANALYSIS

The Government argues that Jenkins' appeal is not only substantively frivolous, but also that he pursued the relief in a dilatory manner so as to orchestrate a severance, and that this evidences the frivolous nature of his arguments. (Dkt. 818 ¶ 1; Dkt. 850). Jenkins strongly denies the allegations of dilatory tactics, and responds that the Government unduly

delayed its request to expedite the appeal. (Dkt. 829; Dkt. 857). Although dilatory tactics can support a finding of frivolousness, a finding of intentional delay is not necessary to a finding of frivolousness. Thus, because the Court finds that the substance of Jenkins' appeal is frivolous, it need not resolve the parties' competing allegations about delay or reach the issue of whether Jenkins pursued the double jeopardy argument in a dilatory manner so as to orchestrate a severance.

Additionally, while the Court has ruled that Jenkins' dual sovereignty argument is without merit (*see* Dkt. 689), it has never indicated that the argument is frivolous. However, because Jenkins is not charged in this Indictment with the same offenses for which he was tried in state court, this Court's retention of jurisdiction does not depend on a finding that the dual sovereignty argument is frivolous. In other words, in order to find that double jeopardy bars any of the counts in this Indictment, a court must necessarily find that the Niagara County District Attorney's office was a tool of the federal government *and* that one or more of the state court charges is the same as one or more of the charged federal offenses. Jenkins has not advanced any non-frivolous argument in support of the latter issue. As a result, his double jeopardy appeal is frivolous, and this Court will retain jurisdiction notwithstanding the pending appeal before the Second Circuit.

As the Court concluded in its Decision and Order dated July 24, 2017, the relevant standard for determining whether offenses are the same for double jeopardy purposes is the same elements test forth by the Supreme Court in *Blockburger* and reaffirmed in *United States v. Dixon*, 509 U.S. 688, 696 (1993). As explained by the Second Circuit:

> The *Blockburger* inquiry asks whether each offense contains an element not contained in the other, and provides that, if not, they are the same offence and double jeopardy bars additional punishment and successive prosecution. If each section requires proof of at least one fact that the other does not, there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both. In that circumstance, the imposition of multiple punishments does not violate the Double Jeopardy Clause.

*United States v. Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013) (internal quotation marks and alteration omitted).

Jenkins has never articulated—either during the various court appearances on this subject or in his written filings—how, even if he is correct that the *Bartkus* exception applies to the dual sovereignty doctrine, the federal prosecution would nonetheless be barred. The Government has detailed how each of the federal offenses contains different elements from those prosecuted in state court (Dkt. 554 at 31-40), and Jenkins has never even attempted to argue that the state court offenses and the federal offenses contain the same elements. Instead, as noted in the Decision and Order entered July 24, 2017 (Dkt. 689), Jenkins based his double jeopardy argument on the wrong test—the "same conduct" test that has been abrogated by Supreme Court and Second Circuit case law. *See, e.g.*, *United States v. Basciano*, 599 F.3d 184, 197-98 (2d Cir. 2010); *United States v. Samuels*, 395 F. App'x 754, 755 (2d Cir. 2010).

Even when this Court provided Jenkins an opportunity to convince it that his argument on this point was not frivolous, Jenkins was unable to do so, stating simply in his most recent filing:

> While we stand on the arguments submitted regarding the same-conduct analysis [Dkt. 636] without further comment, we note that the government's memorandum of law is silent as to the double jeopardy argument grounded

in the dual-sovereignty exception, which was the primary motion advanced on behalf of Mr. Jenkins.

(Dkt. 857 at 3).

Jenkins' focus on dual sovereignty misses the point. The dual sovereignty doctrine is irrelevant if Jenkins was prosecuted previously for different offenses than those being pursued in this federal case. *See* U.S. Const. amend. V ("No person shall be . . . subject for *the same offence* to be twice put in jeopardy of life or limb. . . ." (emphasis added)). If Jenkins is not being prosecuted for the same offense, then there is no double jeopardy issue, regardless of the sovereign pursuing those charges. Contrary to Jenkins' position, it does not matter whether the same conduct is at issue in both the state and federal prosecutions if the offenses charged are based on different statutes containing different elements. *Basciano*, 599 F.3d at 198 (only when the counts charged are based on the same statute does the relevant inquiry become whether the crimes "are the same in fact"); *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003) ("A double jeopardy claim cannot succeed unless the charged offenses are the same in fact *and* in law." (emphasis added)).

The law is clear that, under *Blockburger*, where a defendant stands accused of crimes under different statutes, the same elements test applies. Jenkins has not attempted to argue that the federal counts with which he is charged in this Indictment contain the same elements as the state court offenses. Plainly, they do not. (*See* Dkt. 554 at 31-40; *see also* Dkt. 636 at 8-11). For example, Counts 19 and 20 charge Jenkins with the murders of Maue and Szymanksi, respectively, in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, and Counts 21 and 22 charge Jenkins with possession and discharge

of a firearm in furtherance of the crimes of violence charged in Counts 19 and 20, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j) and 2. Thus, in order to obtain a conviction on any of the counts charged in Counts 19 through 22, the Government must prove, among other elements, murder "for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a)(1). Proof of motive is completely absent from the elements necessary for the state court convictions. Although evidence of motive may have been introduced during the state prosecution (*see* Dkt. 636 at 12-14), that is irrelevant under the *Blockburger* test. The issue is whether the state charges required proof of this element. They did not.[3]

Put simply, the federal offenses with which Jenkins is charged do not contain the same elements as the state offenses, and Jenkins has not even attempted to argue otherwise. Instead, to accept his double jeopardy challenge, a court would have to adopt a test different than the one enunciated by *Blockburger* and its progeny, and instead rely upon abrogated case law cited in Jenkins' papers. Given the fact that the Supreme Court has endorsed the same elements test on at least two different occasions, and that the Second Circuit has similarly followed that test, Jenkins' argument that the Court should look beyond the statutes and consider whether the same conduct was at issue in the state prosecution, is frivolous.

---

[3] Similarly, none of state statutes required proof that Jenkins had previously been convicted of a felony, *see* N.Y. Penal Law § 265.03(3), as is required for a conviction under Count 23 in this case.

- 14 -

## **CONCLUSION**

For the foregoing reasons, the Court finds that Jenkins' appeal of this Court's Decision and Order denying his motion to dismiss on double jeopardy grounds is frivolous, and therefore, the Court will retain jurisdiction and proceed to trial on January 16, 2018, notwithstanding the pending appeal.

SO ORDERED.

                                                                                              _____
                                                                                    ELIZABETH A. WOLFORD
                                                                                    United States District Judge

Dated: November 22, 2017
       Rochester, New York