UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GREGORY WILLSON
a/k/a Flip,

                Petitioner,

        v.

UNITED STATES OF AMERICA,

                Defendant.
_____

**DECISION AND ORDER**

1:15-cr-00142 EAW
1:22-cv-00086 EAW

## I.    INTRODUCTION

*Pro se* petitioner Gregory Willson a/k/a Flip ("Petitioner" or "Defendant") has filed a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence imposed pursuant to a plea agreement. (Dkt. 1952).[1] Petitioner's sole ground for relief is a claim for ineffective assistance of counsel. (*Id*. at 4). The government has filed a response in opposition to the petition. (Dkt. 1975). For the following reasons, the petition is denied.

## II.    BACKGROUND

Petitioner was charged in 18 counts of a 46-count second superseding indictment with various crimes, including a RICO[2] conspiracy in violation of 18 U.S.C. § 1962(d),

---

[1] All references to the docket in the instant Decision and Order are to the docket in Criminal Action No. 1:15-CR-00142 EAW.

[2] "RICO" refers to the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968.

firearm offenses in violation of 18 U.S.C. § 924(c), various narcotics offenses, crimes in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and various VICAR[3] counts, pertaining to the operation of the Kingsmen Motorcycle Club (hereinafter "KMC").  (Dkt. 33). Petitioner was one of 16 defendants named in the second superseding indictment, but he was the only defendant charged in the original indictment and superseding indictment. (Dkt. 1; Dkt. 11).

On November 30, 2017, represented by attorney Thomas J. Eoannou, Esq., Petitioner entered into a plea agreement with the government.  (Dkt. 892; *see also* Dkt. 893 (plea agreement); Dkt. 1302 (transcript of plea hearing)).  Petitioner agreed to plead guilty to counts 1, 8, and 9 of the second superseding indictment, which charged violations of 18 U.S.C. § 1962(d) (Count 1) and 18 U.S.C. § 922(g)(1) (Counts 8 and 9).  (Dkt. 893 at ¶ 1). The plea agreement was made pursuant to Rule 11(c)(1)(C), with the understanding that if the Court rejected the agreed-upon prison sentence of 180 months (calculated in the plea agreement as a below-guideline sentence), then Petitioner could withdraw his plea.  (*Id*. at ¶ 18).

As part of the plea agreement, Petitioner admitted to, among other things:

- Petitioner was at various times a KMC Springville Chapter member and a KMC Nomad;

- The KMC was a criminal organization whose leadership, members, and associates constituted an enterprise as defined by 18 U.S.C. § 1961(4);

---

[3]    "VICAR" refers to the Violent Crimes in Aid of Racketeering Activity statute, codified at 18 U.S.C. § 1959.

- KMC members used marijuana, cocaine, and other controlled substances in and around KMC Chapter Clubhouses, and Petitioner personally sold controlled substances to KMC members and associates at KMC events and inside various KMC Chapter clubhouses;

- Petitioner possessed firearms, KMC members maintained access to firearms, and KMC members possessed and maintained firearms on their person and inside the KMC Chapter Clubhouses;

- KMC members were involved in firearm sales at various times;

- In September 2009, Petitioner took a female, Victim A, from the state of New York to KMC clubhouses in Pennsylvania, where he physically assaulted her, and then brought her back to New York, where he held her against her will to conceal her injuries;

- Petitioner stored cocaine for sale at his girlfriend's house in Buffalo, New York, and he also stored a firearm at that location, despite that he had prior felony convictions;

- Petitioner's residence in Allegany, New York was searched on July 31, 2015, and at that time the FBI recovered KMC paraphernalia, a quantity of marijuana, mushrooms, and a firearm and ammunition, and Petitioner subsequently admitted in recorded jail conversations that the firearm belonged to him; and

- At least 60 kilograms but less than 80 kilograms of marijuana was the amount of converted drug weight involved in Petitioner's relevant conduct.

(Dkt. 893 at ¶ 5; *see also* Dkt. 1975 at 48-55[4]). The plea agreement provided that the government and Petitioner agreed that the Sentencing Guidelines would recommend a prison sentence of 188 to 235 months (with a total offense level of 32 and a criminal history category of V), but pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

---

[4] The transcript of the plea hearing is attached as Exhibit A to the government's response papers. (*See* Dkt. 1975 at 22-59).

Procedure, the parties agreed that the Court should impose a 180 month term of imprisonment. (Dkt. 893 at ¶¶ 17-18).

The plea agreement included an appellate/collateral attack waiver, whereby Petitioner knowingly waived his "right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 17, above, notwithstanding the manner in which the Court determines the sentence." (*Id*. at ¶ 24).[5] The Court engaged in the following colloquy with Petitioner during his plea hearing concerning this waiver:

> THE COURT: This talks about your appeal rights, Mr. Willson. If you were to go to trial and you were convicted and I sentenced you, you would have the right to appeal that conviction and any sentence that I imposed to the court above me, it's called the Second Circuit Court of Appeals. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you would also have some limited rights to what they call collaterally attack that conviction and any sentence by bringing a proceeding before the Court where you were convicted. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: But pursuant to the terms and conditions of this. . . . The fact of the matter is, you're agreeing to the terms and conditions of this plea agreement, that if I sentence you within or less than the range that is set forth in paragraph 17, then you're waiving any right to appeal or collaterally attack that sentence. Do you understand that?

---

[5] The range in section III, paragraph 17 was "a term of imprisonment of 188 to 235 months, a fine of $35,000 to $350,000, and a period of supervised release of 1 to 3 years." (Dkt. 893 at ¶ 17).

>THE DEFENDANT: Yes.
>
>THE COURT: So if you look, and I'll make sure the record is clear, I'll look at paragraph 17, that means if I sentence you within or less than 188 to 235 months in prison, a fine of $35,000 up to $350,000, and a supervised release term of one to three years, then you're waiving any right to appeal or collaterally attack that sentence. Do you understand that?
>
>THE DEFENDANT: Yes.
>
>THE COURT: So, in other words, if I accept the 11(c)(1)(C) agreement here and I impose a fifteen-year prison sentence, and I also sentence you within or less than the fine range and the supervised release range that is in paragraph 17, then you're giving up any right to appeal or collaterally attack that sentence. Do you understand that?
>
>THE DEFENDANT: Yes.

(Dkt. 1975 at 36-37).

In addition, at the plea hearing, the Court confirmed that Petitioner read the plea agreement, understood the terms of the plea agreement, and had the opportunity to discuss the plea agreement with his attorney.

>THE COURT: Now, with respect to the written plea agreement itself, have you gone over that with Mr. Eoannou?
>
>THE DEFENDANT: Yes.
>
>THE COURT: And with respect to any questions you had, was he able to answer them to your satisfaction?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Have you read the agreement yourself?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Have you had sufficient time to confer, in other words, talk to Mr. Eoannou about this before coming in here today?

>        THE DEFENDANT: Yes.
>
>        THE COURT: Are you satisfied with his advice and representation?
>
>        THE DEFENDANT: Yes.

(*Id*. at 26-27; *see also id*. at 47 (Petitioner's assent that he received the plea agreement 10 days before the plea hearing, reviewed the language of the plea agreement with his attorney three times, and had the opportunity to revise language in the factual basis with which he had disagreed)). Petitioner stated that no other promises were made to him other than those included in the plea agreement, and that no one had coerced him or threatened him into pleading guilty. (*Id*. at 44). Petitioner signed in court a declaration included at the end of the plea agreement, stating:

> I have read this agreement, which consists of 16 pages. I have had a full opportunity to discuss this agreement with my attorney, Thomas J. Eoannou, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

(Dkt. 893 at 16; *see also* Dkt. 1975 at 45-46).

Thereafter, on June 25, 2018, represented by new counsel, Petitioner filed a motion to withdraw his guilty plea. (Dkt. 1319). In his motion, Petitioner stated that he was never provided with a copy of the plea agreement prior to entry of his guilty plea, he never read the plea agreement prior to signing it and pleading guilty, he is innocent of the portions of the factual basis contained in the plea agreement alleging that he engaged in drug dealing, gun running, and that he punched a woman, and he answered the Court's questions at the plea hearing "on the advice of his attorney and without being aware of the allegations

contained in the factual basis set forth above." (*Id*. at 3). The undersigned denied the motion to withdraw the guilty plea on August 9, 2018. (Dkt. 1374).

On December 12, 2018, consistent with the terms of the Rule 11(c)(1)(C) plea agreement, the undersigned sentenced Petitioner to a total of 180 months in the custody of the Bureau of Prisons, followed by three years of supervised release. (Dkt. 1483; Dkt. 1494). The Court imposed a $7,500 fine and a $300 special assessment. (*Id*.).

Notwithstanding the appellate waiver in the plea agreement, Petitioner filed a notice of appeal. (Dkt. 1486 (notice of appeal); Dkt. 1499 (amended notice of appeal)). The Second Circuit Court of Appeals dismissed the appeal by a Mandate issued on February 8, 2021. (Dkt. 1939).

Petitioner filed the instant motion to vacate pursuant to § 2255 on January 31, 2022. (Dkt. 1952). The government responded on January 15, 2023. (Dkt. 1975).

## III. DISCUSSION

Petitioner asserts that he is entitled to habeas relief because he had ineffective assistance of counsel, including because: his attorney did not object to conduct charged beyond the five-year statute of limitations charged in count 1 of the second superseding indictment and regarding the information included in paragraph 5(e) of the plea agreement; his attorney did not allow Petitioner to take his case to trial, pressured Petitioner into taking a plea and scared and threatened his mother into pushing Petitioner to take a plea; and his attorney did not give Petitioner the opportunity to read the full plea agreement, and did not allow Petitioner to take a copy of the plea agreement back to his cell. (Dkt. 1952 at 4).

In response, the government argues that Petitioner's ineffective assistance of counsel claims are meritless and unsupported by the record in the case, and also that Petitioner is bound by the collateral attack waiver in the plea agreement. (Dkt. 1975).

A.   **Legal Standard**

A prisoner in federal custody may challenge the validity of his sentence by filing a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. *See* 28 U.S.C. § 2255(a). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).

In reviewing a *pro se* petition for habeas corpus, the Court must be mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted); *see also Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) ("[D]ue to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye. . . .").

B.   **Ineffective Assistance of Counsel**

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-

- 8 -

known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).

In assessing the first prong—counsel's performance—"a reviewing court must judge [the attorney's] conduct on the basis of the facts of the particular case . . . and may not use hindsight to second-guess his strategy choices." *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) (quotations and citation omitted). Notably, "[j]udicial scrutiny of counsel's performance must be highly deferential," since "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. With respect to the latter prejudice prong, a petitioner who has pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Under Section 2255, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Whether to hold a hearing is within the district court's discretion. *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and

controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must . . . take into account admissions made by the defendant at his plea hearing, for solemn declarations in open court carry a strong presumption of verity. Subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* (internal citations, quotations, and alterations omitted); *see also United States v. Amirouche*, 748 F. Supp. 3d 110, 126-27 (E.D.N.Y. 2024) ("Courts routinely summarily reject *Strickland* claims in Section 2255 motions where the defendant . . . offers only broad, general allegations to contradict testimony from his or her guilty plea hearing that he or she was not induced to plead guilty by promises from an attorney as to sentencing." (collecting cases)).

Petitioner claims that his attorney was ineffective because he did not allow Petitioner to take his case to trial, pressured Petitioner into taking a plea, did not give Petitioner the opportunity to read the full plea agreement, and did not allow Petitioner to take a copy of the plea agreement back to his cell. Petitioner has failed to address either one of the *Strickland* requirements (nor does the evidence before the Court suggest that he could meet either of them), and his motion does not warrant a hearing. Rather, the record before the Court demonstrates that Petitioner entered his guilty plea following an exhaustive plea colloquy and signed a declaration stating that he understood the provisions of the plea agreement and was entering into the plea agreement in a knowing and voluntary manner, and any argument otherwise is directly contradicted by the record.

As explained above, on November 30, 2017, Petitioner was placed under oath and pleaded guilty pursuant to a plea agreement. The Court engaged in a lengthy colloquy with Petitioner and determined that he was entering into the plea in a knowing, voluntary, and intelligent matter. (*See* Dkt. 1975 at 45-46 ("I am satisfied, Mr. Willson, based on your answers to my questions and based on your demeanor here in court and based on you signing this plea agreement, that you are entering into this plea in a knowing, voluntary and intelligent manner.")). Petitioner stated the following during his plea hearing: he was entering into the plea knowingly and voluntarily, and no one had threatened or coerced him into pleading guilty; he read the entire plea agreement, he had adequate time to review the plea agreement, and discussed it with his attorney[6]; and that he was satisfied with his attorney's advice and representation. Petitioner also represented under oath and on the record that he read the 16-page agreement with his attorney, that he had a full opportunity to discuss the agreement with his attorney, and that he was satisfied with his attorney's representation. (*Id*. at 26-27, 45). In other words, the assertions Petitioner now makes, including that he was pressured into taking the plea and did not have the opportunity to review the plea agreement, are directly contradicted by his sworn testimony at his plea hearing.

The conclusory allegations Petitioner now makes in the petition cannot overcome his prior statements made under oath at his plea allocution. *See, e.g., United States v.*

---

[6] In fact, at the May 18, 2018 status conference, Petitioner's attorney stated that he believed that, counting travel time, he spent about 27 and a half hours with Petitioner going over the plea agreement. (Dkt. 1267 at 9).

*Hernandez*, 242 F.3d 110, 112-13 (2d Cir. 2001); *see also Amirouche*, 748 F. Supp. 3d at 126 (denying motion to vacate where the petitioner maintained that his attorney gave him false assurances about his sentence, and explaining that a defendant "may not overcome the obstacle posed by his own sworn guilty plea hearing testimony, simply by making a broad, general statement contradicting it," and noting that the defendant was "far from the first convicted defendant to come up with that idea"), *reconsideration denied*, 2025 WL 2783187 (E.D.N.Y. Sept. 30, 2025); *United States v. Logan*, 845 F. Supp. 2d 499, 511 (E.D.N.Y. 2012) (denying motion to vacate, and concluding that the petitioner's claims with regard to ineffective assistance of counsel amounted to little more than conclusory allegations that were unsupported by the record, including because "[petitioner's] claims that [his attorney] did not undertake a sufficient investigation of the case and that [his attorney] pressured [petitioner] to accept the plea agreement are contradicted by his prior sworn statements, and are unsupported by the record," because "[petitioner] stated both during his plea allocution and sentencing, under oath, that he was satisfied with [his attorney's] legal representation"); *Jackson v. United States*, No. 5:07-CV-1303 (NAM), 2009 WL 3246749, at *4 (N.D.N.Y. Oct. 5, 2009) ("As the Second Circuit noted in *Adames v. United States,* 171 F.3d 728 (2d Cir. 1999), a defendant's statements at his plea hearing 'are generally treated as conclusive in the face of the defendant's later attempt to contradict them'"). Given Petitioner's assent on the record that he was entering into the plea in a knowing, voluntary, and intelligent manner, and given his representations that he was satisfied with his attorney's advice and representation, Petitioner cannot now claim that he was pressured into taking the plea and did not read the full agreement.

Petitioner's claim that his attorney did not allow him to take a copy of his plea agreement back to his cell, without more, does not reach the threshold for an ineffective assistance of counsel claim, particularly considering Petitioner's sworn statements at his plea hearing that he had sufficient time to review the plea agreement with his attorney. In other words, an attorney is not required to permit his client to bring a copy of a plea agreement into his jail cell, and the fact that Petitioner did not review the plea agreement in his jail cell does not render his plea unintelligent or involuntary. At a status conference on May 18, 2018, held in connection with Petitioner's motion to withdraw his guilty plea, counsel indicated that he did not leave the plea agreement at the jail for security reasons. (Dkt. 1267 at 9; Dkt. 1374 at 9).

Other than Petitioner's own conclusory statements in the petition—which are directly contradicted by the statements he made under oath at his plea hearing—Petitioner fails to offer any further information explaining this discrepancy. As previously recognized by the Court in connection with its Decision and Order denying Petitioner's motion to withdraw his plea, Petitioner "benefited from excellent representation by his assigned counsel, and his attempt to now claim that the same counsel somehow coerced him into entering into the plea is wholly unsupported by the record in this case." (*See* Dkt. 1374 at 16). Given the existing record, the Court in its discretion concludes that a hearing is not necessary in this instance. *Logan*, 845 F. Supp. 2d at 519 (rejecting the petitioner's claim for ineffective assistance of counsel, and concluding that the petitioner had raised no material issues of fact requiring a hearing, where the court had before it the indictment, the

plea agreement, the complete transcript of the plea allocution, and the sentencing proceeding).

Even if Petitioner had demonstrated that his attorney's performance was deficient, he has wholly failed to address how he would have been prejudiced by his attorney's performance—in other words, that but-for counsel's errors, there is a reasonable probability that he would not have entered the guilty pleas and rather would have proceeded to trial, *see Hill*, 474 U.S. at 59, where Petitioner would have faced life imprisonment, including 105 years in mandatory minimum sentences if convicted on all charges (which is well above the 180-month sentence imposed pursuant to the plea agreement). Accordingly, Petitioner is not entitled to habeas relief based on ineffective assistance of counsel.[7] Because of the Court's conclusion in this regard, it need not and does not reach the government's alternative argument concerning the collateral attack waiver.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court denies Petitioner's § 2255 motion. (Dkt. 1952). The Clerk of Court is directed to close Civil Action No. 1:22-CV-00086 EAW. The Court

---

[7]   Petitioner also argues that his attorney was ineffective because he did not object to conduct charged beyond the five-year statute of limitations, included at paragraph 5(e) of the plea agreement. Paragraph 5(e) of the plea agreement describes the aforementioned assault and kidnapping of Victim A, which occurred in September 2009. (*See* Dkt. 983 at 5). The statute of limitations for a RICO conspiracy claim, as charged in count 1 of the second superseding indictment, does not run until the objectives of the conspiracy have been accomplished or abandoned. *See, e.g., United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987). The undersigned presided over the lengthy criminal trial of Petitioner's co-defendants, and the KMC's racketeering activities continued at least until the return date of the second superseding indictment. Further, even if the events described in paragraph 5(e) occurred outside the statute of limitations, they would be considered relevant conduct to the offenses to which Petitioner pleaded guilty.

declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c).

    SO ORDERED.

                                                               _____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        December 9, 2025
                Rochester, New York